## Trovillo *against* Tilford.

Although the testimony greatly preponderates in favour of an assumed position, yet it is error in the court to instruct the jury that it is conclusive.

An actual seizure is generally necessary to constitute a valid levy of goods, yet the defendant may dispense with it for his own accommodation; and if he does, as between him and the officer, the levy is good.

When goods are levied on, and, by arrangement, left in the possession of the defendant, he thereby, *quoad hoc*, becomes the servant of the officer; and upon his refusal to deliver the goods according to his engagement, an action of trespass *vi et armis* will lie against him and any one who aids him, in retaining or removing the goods.

ERROR to the district court of *Allegheny* county.

This was an action of trespass *vi et armis et de bonis, &c.,* by Elijah Trovillo, Esq., high sheriff, against Samuel Tilford and A. M. Tilford.

The sheriff having in his hands a *fieri facias,* at the suit of W. P. and T. M. Bryan, against Samuel Tilford, went to the defendant and told him, he was directed to levy on his personal property; defendant replied, that the property belonged to his son, A. M. Tilford, who was then absent. The defendant and sheriff went together to the plaintiffs' attorney, when it was agreed that the defendant should give the sheriff a schedule of the goods as a levy, and they should remain in his possession until his son returned. The sheriff made no actual seizure, but the defendant, in a short time after, gave the sheriff a written list of the property. Upon the return of A. M. Tilford, the son, the sheriff called for the property, and A. M. Tilford said the property was his, and that he would defend it with his life. The sheriff went to the house where the property was, and in which the father and son lived together, the son being unmarried, for the purpose of getting the property, but found it fastened against him. This action of trespass was then brought.

There was much evidence given on the trial of the cause, with respect to the ownership of the property; the plaintiff endeavouring to establish the ownership to be in the father, from the fact of his being in the possession of it, and the son, a young man without family, residing with him. But the evidence greatly preponderated in favour of the ownership of the son. During the progress of the trial, and after the plaintiff's evidence was given, the counsel of the defendants prayed the court to direct the jury to render a verdict in favour of Samuel Tilford, no trespass by him having been proved; and the court so ordered. Verdict accordingly. Samuel Tilford was afterwards examined as a witness.

The counsel for defendant requested the court to charge the jury upon the following points.

[Trovillo v. Tilford.]

1st. There is no legal evidence that a trespass was committed, and the jury are bound to find for defendant.

2d. There is no legal evidence that the claim of defendant to the property in question was fraudulent, and therefore the verdict must be in his favour.

3d. There is no evidence of a levy.

And the court instructed the jury accordingly, to which the plaintiff's counsel excepted.

*M'Candless*, for plaintiff in error, contended that trespass was the proper remedy, and cited to that point, 9 *Mass.* 265, 104; 1 *Pick.* 232; 2 *Roll. Abr.* 569; 11 *Mass.* 219, 242, 317; 16 *Mass.* 464; 2 *Am. Com. Law* 128.

*Lowrie*, contra, cited 12 *Wend.* 563.

The opinion of the Court was delivered by

ROGERS, J.—Although the testimony may greatly preponderate in favour of the position assumed by the defendant's counsel, that A. M. Tilford, the son, was the owner of the goods on which the levy was made, yet, we think the court were wrong in ruling, as a matter of law, that there was no legal evidence that the defendant's claim to the property in question, was fraudulent. The allegation by the plaintiff, was, that the goods were the property of Samuel Tilford, the father, and that the transfer to the son was colourable, and made with a design to cover it from the claim of creditors. That it was at one time his property, is admitted, and at the time of the levy it was apparently in his possession. Samuel Tilford, the father, was the head of the family, and the goods were used for the purposes of the family, and certainly, the fact that the son, who was unmarried, and living with his father at the time of the levy, held a bill of sale for the property, required explanation, which it is at least possible, the jury, had the fact been submitted to them, may have decided was not given. It is not my intention to give any opinion unfavourable to the entire integrity of the defendants, but so many cases are constantly occurring, of attempts to cover property of debtors by means of fictitious sales, that such cases should be narrowly watched and carefully examined. The credibility of the witnesses was a matter for the jury, and although the testimony of Brown is direct and positive, yet it would have been more satisfactory had he disclosed the source from which he derived his information. It would, also, have added to the strength of the plaintiff's case, if they had thought proper to examine Mr Shirly, who was the trustee under the assignment. From the testimony of Brown, we cannot avoid suspecting, that he acted as the agent of Shirly, rather than Mrs Clopper, with whom, it would seem, he had no communication, and that his knowledge was obtained from that source. Under the circumstances, we think the

[Trovillo v. Tilford.]

court invaded the province of the jury, in withdrawing the facts from their decision.

But, were the court right in ruling, that there was no evidence of a levy? This point, can only arise on the supposition, that Samuel Tilford, against whom the execution was issued, was the owner of the property on which the levy was made. The officer, in making the levy on the goods of the defendant, should make an actual seizure, but seizing part of the goods in the name of the whole, on the premises, is a good seizure of the whole. But, although an actual seizure is in general necessary to constitute a good levy, yet a defendant may dispense with it for his own benefit and accommodation. Thus in Lyman *v.* Lyman, 11 *Mass. Rep.* 217, it was held, that where certain friends of a debtor, against whom a deputy sheriff had a writ of attachment, gave to the deputy a receipt and promise in writing, to deliver him on demand, certain goods of the debtor, of which the deputy returned an attachment, it was held not to be competent for the receipters, in defence of an action by the deputy upon their receipt, to except, that no attachment of the goods had been actually made. The objection was, that the goods returned as attached, were not actually seized by the officer, although he was in the house of the debtor, where the goods were kept at the time. But the court held, that although an actual possession of goods attached, may be necessary to prevent the operation of a second attachment, yet, if the officer, for the accommodation of the debtor, at the instance of his friends, relieves him from the inconvenience of having his goods removed, the debtor can have no ground of complaint, and the receipters are precluded by their own act, from calling in question the validity of the attachment. In the present instance, an actual seizure was dispensed with, at the request and for the accommodation of the defendant in the execution. The sheriff gave his deputy the writ, and told him to execute it, but instead of going to the dwelling house, he went to the store, where he knew the defendant was, and told him of his instructions. After some conversation, he consented to go with the deputy to the house, and on the way, he said he would rather see his attorney first. Mr Lowry was not at home, and the defendant said he did not know what to do, as his son and attorney were both absent. This was represented to the plaintiff's attorneys, who told him, if he would give a levy, it might remain so until his son's return. The defendant then gave a written list, a memorandum of the goods, which paper was attached to the writ as a levy, with the indorsement, "levy made, stayed by plaintiff's attorney." To permit Samuel Tilford now, to object to the regularity of the levy, would be contrary to his own agreement, and manifestly unjust. It must be borne in mind, that the contest is between the original parties to the transaction.

It cannot alter the case, that, at the time of the levy, Samuel Tilford represented, that the goods belonged to his son, provided the

[Trovillo v. Tilford.]

jury should believe that those representations were not true in fact.

The court further instructed the jury, that there was no legal evidence that a trespass was committed.

It was in proof, that after the return of A. M. Tilford, to whom it was alleged the goods belonged, the plaintiff's attorneys told the deputy sheriff to go and get the property. He called at the store, saw both father and son, and told them he had instructions to get the property he had levied on. The father alleged it was the property of the son, and that he had no authority to give the levy. The son said he would neither pay the money nor give the property; that he would defend it with his life, and that his attorney had so instructed him. The deputy sheriff again demanded the property, and was told the house was fastened, and that he could not·get in. The sheriff's officer went twice to the house, and found the front of the house closed. On this evidence, the court gave the instructions of which the plaintiff complains.

From the time of a seizure, the officer should, either by himself or by some other person, keep possession of the goods, or otherwise they may be liable on a second execution. In England, it is usual to put some person in possession of the goods, and this is sometimes done here, to avoid the necessity of an actual removal. But it frequently happens, that goods, particularly household furniture levied on an execution, from motives of humanity are left in the possession of the debtor himself, in the full confidence that they will be forthcoming to answer the exigency of the writ. And this, it appears, was the case here. The goods were left under this arrangement, in the temporary possession of the defendant, with an understanding, that they would be given into the actual custody of the sheriff, on the return of the son. And this constitutes the defendant, the bailiff, or servant of the sheriff. Thus in Ludder *v.* Leavitt, 9 *Mass. Rep.* 104, it is held, that where a sheriff having attached personal chattels on an original writ, delivers them to a third person for safe keeping, such person is the mere servant of the sheriff, and has no legal interest in the chattels, and that he cannot maintain trover for them. The same principle is affirmed in Warren *v.* Leland, 9 *Mass. Rep.* 265. These were cases of goods delivered to a third person, but that cannot alter the principle, for as between the defendant and the sheriff, the same relation must exist, and the owner becomes, *quoad hoc*, his bailiff or servant. And in this point of view, trespass well lies. Thus in Glasse *v.* Hayman, 1 *Leon.* 87, it was ruled, that trespass *vi et armis* lies against a servant for carrying away his master's goods. The case was this; Joan Glasse brought an action of trespass *vi et armis* against John Hayman, who pleaded the general issue, and the jury found this special verdict: that the plaintiff was a grocer in Ipswich, and there held a shop of groceries, and *quoad illa reposuit fiduciam* in the defendant, to sell the grocery wares of

[Trovillo v. Tilford.]

the plaintiff in the said shop; and further found, that the defendant being in the said shop in the form aforesaid, *cepit et asportavit* the said wares, and did convert them, &c. It was moved in arrest of judgment, that this action *vi et armis*, upon this matter did not lie, but rather an action upon the case. But the court was clearly of opinion, that the action doth well lie; for when the defendant was in the shop aforesaid, the goods and wares did remain in the custody and possession of the plaintiff himself: and the defendant hath not any interest, possession or other thing in them, and therefore, if he intermeddle with them in any other manner, than by uttering of them by sale, according to the authority to him committed, he is a trespasser, for he hath not any authority, to carry the wares out of the shop not sold, but all authority is in the shop. And Rodes put the case of *Littleton* 25. If I deliver my sheep to another to manure my land, and afterwards he kills them, I shall have an action of trespass against him. And afterwards judgment was given for the plaintiff. And see 20 *Viner* 55; *Golds.* 72, *pl.* 18; *Blep. Cases.* The goods, after the levy, were left in the custody of the defendant for a limited time, and for a special purpose. This trust he has violated, by denying (contrary to the truth, if the jury should so find) his right to the property, and asserting the right of another, for the fraudulent purpose of defeating the plaintiff's action, and avoiding his own agreement. This makes him a trespasser, for it cannot be doubted, that if a servant, who has the mere custody of his master's goods, as a butler, who has the care of his master's plate, delivers them to another, on any pretence whatever, he is a trespasser, and that either trespass or trover may be brought against him. In trespass *vi et armis* no actual force is necessary to be proved. He who interferes with my goods, and without delivery by me, and without my consent, undertakes to dispose of them, as having the property either general or special, does it at his peril to answer me the value in trespass or trover. Gibbs *v.* Chase, 10 *Mass. Rep.* 131. And upon the same ground, A. M. Tilford is also a trespasser, if the jury should find, that this was a juggle between the father and son, to avoid the effect of the levy, and to withdraw the goods from the lien of the execution. If a third person receive from a servant the goods of the master, knowing them to be so, and refuses to restore them, trespass will lie. And there is a distinction between a bailiff or servant, and a bailee of a chattel, coupled with an interest, who may maintain an action, even as against the bailor, who is the general owner. 1 *Chitty* 170. The delivery of a chattel by a servant can vest no interest, and all persons who direct, or assist, aid or encourage another in committing a trespass, are in general liable as principals, though not even benefitted by the act. 2 *Saund.* 47; *B. N. P.* 41.

It will be perceived, that the case depends entirely on the point, to whom of right the goods belong. If to the father, the action

[Trovillo v. Tilford.]

well lies, and if they are the property of the son, the verdict must be for the defendants.

Judgment reversed, and a *venire de novo* awarded.