# Becker *versus* Smith.

1. Becker by articles sold real estate to Linn, and agreed that he should have the use of certain personal property, and might sell materials belonging to Becker on the premises on commission; Linn to deposit the proceeds with a banker named, and when the payments to the banker reached a sum named, Linn was to become the owner of the personal property and the materials if any remained; if the sales did not amount to the sum, Linn was to make up the deficiency. *Held*, not to be a conditional sale but a bailment.

2. Performance at a day may be made of the essence of a contract.

3. A stipulation for performance at a day, when of the essence of the contract, is not in the nature of a penalty against which equity will relieve, but one which lies at the root of the agreement, and which the party makes the condition on which he contracts.

4. Where delivery accompanies a sale of chattels, the mere reservation of a lien or right of property will not protect them from the executions of the vendee's creditors.

5. Where the delivery of chattels is upon a bailment for a proper purpose, they will be protected from the bailee's creditors.

6. To support an action of trespass *de bonis asportatis*, the plaintiff must have the rightful possession of the goods, or a general right of property in them and a constructive possession.

7. An owner who has parted with his goods by hiring for a limited time cannot recover in trespass. But if the custodian is a mere agent or servant he ma

[Becker *v.* Smith.]

8. If the owner be entitled to the immediate possession, the goods being wrongfully withheld, his right of property. draws to him the constructive possession, and he can maintain trespass.

November 16th 1868. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Washington county :* No. 51, to October and November Term 1868.

This was an action of trespass *d. b. a.*, by Adam Becker against Edward R. Smith, who was sheriff of Washington county. The writ was issued December 17th 1866.

Becker being the owner of the Washington Foundry, and of tools, horses, wagon, &c., in use at it, and also of stock on hand there, on the 28th of March 1866 entered into articles of agreement with John P. Linn, by which he agreed to sell the foundry and appertenances to Linn for $11,000. In addition thereto, he agreed to let Linn " have the use of the blacksmith-tools, anvil, bellows, &c., in the blacksmith shop, also the use of his wagon and two horses at present in use at the foundry—the horses to be well fed, and the property taken care of by the party of the second part for the party of the first part. The party of the first part further agrees to leave his entire stock, at present on hand in the foundry and plough-shop, consisting of castings, new and old metal, ploughs, &c., in the hands of the party of the second part for sale on commission ; the new and old metal on hand to be converted into castings by the party of the second part, and sold on commission, alike with the castings, ploughs, &c., now on hand, and after deducting the sum of 25 per cent. from the invoice-price, in full of all commission and compensation for storage and sale of the same. The balance of the cash realized from the sale of the stock to be deposited weekly in the banking-house of William Smith & Son, Washington, Pa., and whenever, and as often as the amount reaches $100 or over, to be applied to the payment of the judgments at present a lien on the foundry. This to continue until the sum of $4250 shall have been paid on said judgment indebtedness, when the balance of the stock remaining on hand unsold, together with the blacksmith-tools, wagon and horses, shall be and become the sole and separate property of the party of the second part hereto : this in no way to interfere with or affect the price agreed to be paid for the real estate. But in the event the amount realized from the sale of the stock on hand, after deducting commission, shall fall short of $4250, the deficiency to be made up and paid by the party of the second part, so as to cancel and extinguish the judgment-indebtedness to that amount. In consideration of the foregoing, the party of the second part hereby assumes the payment of judgments now a lien against the party of the first part, in Washington county, to the amount of $15,250, as follows, &c.,  *  *  which, when paid,

[Becker v. Smith.]

will be in full for both real and personal property agreed to be conveyed in manner aforesaid. The said party of the first part to make to the said party of the second part a deed of general warranty for the real estate aforesaid, upon the compliance with the conditions herein contained by the party of the second part. The buildings to be kept insured, &c. * * In the event of default or failure to comply with the terms of this agreement as set forth, said default to forfeit the same, and the party of the first part to have the right of re-entry," &c.

The plaintiff gave in evidence a judgment in favor of Samuel Teasdale against Linn for $400; a fi. fa. thereon, issued July 12th 1866, and levy August 4th 1866, on the "contents and fixtures of the Washington Foundry, as follows: to wit, stoves, flasks, patterns, tools," &c.; also notice from Becker dated August 7th, and attached to the levy, to wit: "the property levied on belongs to Adam Becker, and not to J. P. Linn, and sheriff notified not to sell," &c.; also evidence of the sale of the property by the sheriff, and its removal by the purchasers. He gave in evidence a list of the property left in the foundry when the possession was taken by Linn. He proved, also, that on the 31st of July 1866, he demanded from Linn at the foundry the possession of stock and real estate, and that it was refused by Linn; also, that after March 31st 1866, Linn had made no deposit of money in the banking-house designated in the agreement.

The plaintiff having closed, the court (Sterrett, P. J., of the Fifth District) directed a nonsuit to be entered. This was assigned for error by the plaintiff, who removed the case to the Supreme Court.

*Hopkins & Lazear* and *Hart & Brady*, for plaintiff in error.— The agreement created only a bailment, with an agreement that the title should be vested in Linn on certain conditions which he never complied with: Myers v. Harvey, 2 Penna. R. 481; Clarke v. Jack, 7 Watts 375; Chamberlain v. Smith, 8 Wright 431; Rowe v. Sharpe, 1 P. F. Smith 26, and cases cited; Fairbank v. Phelps, 22 Pick. 535; Reed v. Upton, 10 Id. 522; Dresser Manuf. Co. v. Waterston, 3 Metc. 9; Copeland v. Bosquet, 4 W. C. C. 588; Maxwell v. Briggs, 17 Verm. 176; Lucy v. Bundy, 9 N. H. 298. If the sale was conditional the demand was made before the levy: Marston v. Baldwin, 17 Mass. R. 606. The sheriff at most could sell but Linn's equitable interest: Rose v. Story, 1 Barr 196. The flasks, patterns, &c., were part of the realty: Gray v. Holdship, 17 S. & R. 415; Oves v. Ogelsby, 7 Watts 106; Voorhis v. Freeman, 2 W. & S. 119; Harland v. Harlan, 3 Harris 507; Overton v. Williston, 7 Casey 158; Addison on Contr. 228; Lanyon v. Togood, 13 M. & W. 29; De Ridder v. McKnight, 13 Johns. 384; Hill v. Sewald, 3 P. F. Smith 274.

[Becker *v.* Smith.]

*D. S. Wilson, W. McKennan* and *Montgomery & Gibson,* for defendants in error.—Becker had not the right of immediate possession, and cannot therefore maintain trespass: Waldron *v.* Haupt, 2 P. F. Smith 411. The property being in the possession of Linn by the contract with Becker, he cannot maintain trespass against the sheriff for taking it from Linn: Corfield *v.* Carrol, 4 W. C. C. R. 371; Lewis *v.* Carshaw, 3 Harris 34. Replevin will not lie for fixtures separated from the realty: Powell *v.* Smith, 2 Watts 126.

The opinion of the court was delivered, January 4th 1869, by

AGNEW, J.—The court below erred in ordering a peremptory nonsuit. The effect was to take from the jury the fact which bore upon the performance of the contract. That performance at the day may be made of essence in a contract is too well settled to be disputed: 2 Penna. R. 454; 9 Watts 49; 5 W. & S. 485; 3 Barr 13. It is not in the nature of a penalty against which equity will ordinarily relieve, but a stipulation which lies at the root of the agreement, and which the party makes the very condition on which he contracts. Such is the stipulation in this contract.

Becker desired to sell his foundry to Linn, but the judgments against it were larger than the price; and Becker had to make provision for their reduction. The means of accomplishing this is to be found in the terms of the contract as to the personal estate. The stock on hand, tools, wagon and horses, were evidently valued at the sum of $4250, as this was the sum at which it was supposed they could be sold, and the property was to go into the hands of Linn to enable him to dispose of it and apply the proceeds to the payment of the judgments. The stock on hand, consisting of castings, new and old metal, ploughs, &c., could be sold to better advantage by the party carrying on the foundry. Hence the contract provided that the entire stock should be bailed to Linn, to be sold on commission; the new and old metal to be converted into castings for sale in like manner, and after allowing 25 per cent. commission for compensation, storage and sale; the balance to be applied to payment of the judgments. It was only in the event that the $4250 should be realized by the sales of stock, the remainder of the stock and other personal property were to become the property of Linn, the other property being delivered to him upon a contract of bailment for use till that event happened. Now, clearly, this was not a mere conditional sale to Linn, but a bailment for legitimate purposes, recognised by repeated decisions as not falling within the principle which subjects personal estate delivered upon a contract of sale to the execution-creditors of the purchaser.

It is well settled that where delivery accompanies a sale of chattels, the mere reservation of a lien or of a right of property

[Becker *v.* Smith.]

will not protect them from the executions of the vendee's creditors: Martin *v.* Mathiot, 14 S. & R. 214; Jenkins *v.* Eichelberger, 4 Watts 121; Waldron *v.* Haupt, 2 P. F. Smith 408. But where the delivery is upon a mere bailment for a proper purpose, the law is otherwise: Myers *v.* Harvey, 2 Penn. 479; Clark *v.* Jack, 7 Watts 375; Rowe *v.* Sharpe, 1 P. F. Smith 26. In reference to the peculiar features of this contract, to wit, the bailment to sell on commission, and to manufacture and sell, there are two cases directly in point. In McCullough *v.* Porter, 4 W. & S. 177, it was held that an agreement to furnish goods to an insolvent to be sold at invoice prices, he returning the invoice price after sale to the consignors and retaining all above that sum for the support of himself and family, is a bailment; and the goods are not subject to the executions of the insolvent's creditors. Gibson, C. J., refers to the case of Jenkins *v.* Eichelberger, and distinguishes it from the case before him. King *v.* Humphreys, 10 Barr 217, was a case where Humphreys delivered to Ensign, under a contract with him, certain rags at 5 cents per pound, to be manufactured into paper for Humphreys, for which he was to furnish his note to Ensign at 10 cents per pound, the usual mode of the trade in working rags into paper. It was there held, affirming the judgment of Brother Sharswood in the District Court, that the paper manufactured from the identical rags was not subject to an execution against Ensign. The delivery of the stock on hand for sale on commission, and of the metal to be converted into castings also to be sold on commission, and the proceeds of the sales deposited with a banker for the purpose of paying off the judgment, was clearly a bailment only; and the property thus bailed was not subject to the executions of Linn's creditors.

The next question arises upon the form of action, which was trespass *vi et armis de bonis asportatis*. It is undoubtedly true that a plaintiff, to support this action, must have the rightful possession of the goods or a general right of property in them, and a constructive possession. Therefore, an owner who has parted with his goods by a hiring for a limited time, cannot recover in trespass: Ward *v.* McAuley, 4 Tenn. R. 489; Corfield *v.* Corryell, 4 Wash. C. C. 371; Garven *v.* Hanger, 7 Tenn. R. 10. But if the person in possession is a mere servant or custodian, the owner may maintain the action: Trovillo *v.* Tilford, 6 Watts 468; 2 Saunders on Pl. & Ev. 862. And if the owner be entitled to immediate possession, the goods being wrongfully withheld, his general right of property draws to him the constructive possession, and he can maintain trespass: 2 Greenl. Ev. §§ 614, 615; Thomas *v.* Snyder, 11 Harris 515; Lewis *v.* Cousan, 3 Id. 34; Waldron *v.* Haupt, 2 P. F. Smith 410; King *v.* Humphreys, 10 Barr 217; 2 Saunders Pl. & Ev. 862; 6 Watts 471.

The question in this case, therefore, depended on the right of

[Becker *v.* Smith.]

Becker to an immediate return of the goods from Linn. It is here where the ordering of the nonsuit peremptorily took from the jury the determination of facts necessary to solve the question. The plaintiff had given evidence that Linn had had the goods from March to July, without depositing a dollar arising from sales with the banker selected in the contract to receive the money, and he had also shown that he made a demand of Linn for the return of the property, and had given notice to the sheriff of his right to it. It was therefore a question of fact whether Linn had failed to perform his contract, and thus determined the bailment by the terms of the agreement; and whether the plaintiff had put himself in a position to be entitled to the possession immediately by his demand of the property.

By withdrawing the facts from the jury, the court assumed to decide the whole case as a question of law, and in this we think there was error.

Judgment reversed, and a *procedendo* awarded.