JOHN W. HARLAN *et al. v.* BENJAMIN HARLAN *et al.*

1. EXECUTION. *Judgment. Rights of purchaser.* Where there is a valid judgment on which an execution can properly issue, a mistake made by the officer, whose duty it is to issue it, is a mere error or irregularity, for which the execution may be quashed upon direct proceedings for that purpose; but if the defendant allow the writ to be executed, the error will not ordinarily prejudice the title of a third person claiming under it, either directly or through the judgment plaintiff; the title of the plaintiff himself, by an estoppel or disability personal to himself, being open to attack by the debtor and those claiming under him, if the error be such as is not amendable.

2. SAME. *Sheriff's sale. Identity.* A purchaser at a sheriff's sale of land must show, in support of his title, a judgment, an execution thereon, and a sale and conveyance under the execution, and when a variance is found between the execution and the judgment, or between either and the recitals of the conveyance, the question is one of identity, and if from the whole writ and the whole judgment record the court can feel assured that the execution was issued upon the judgment, and the conveyance was based upon both, the identity is established.

3. SAME. *Same. Same.* Where, therefore, a judgment on a sale note was rendered in the case of L. H. Nunnelly and others against W. H. Carothers and others, in favor of W. H. Johnson, clerk and master and special receiver, the judgment by its caption and recitals showing the facts, an execution, reciting the judgment correctly in all respects except in stating the judgment was in favor of L. H. Nunnelly and others was held to be sufficiently identified, the judgment debtor having, in writing on the back of it, authorized the sale of the land in controversy, and after the sale, having paid the costs to the sheriff.

4. SAME. *Alias. Endorsement.* The issuance of an *alias fi. fa.* only raises a presumption of the waiver of a levy on land made under the previous *fi. fa.*, which is rebutted by an endorsement by the clerk of the levy on the *alias*, with a written direction to sell the land thus levied on, and a written agreement by the debtor himself that the land described in the levy might be sold by the sheriff at a designated time and place, which was done.

5. SAME. *Same. Return and deed of sheriff.* The land thus sold was bid off by an attorney "for the plaintiffs," according to the return of the sheriff, but for W. M. Johnson, as recited in the sheriff's deed, and Johnson, as clerk and master, joined in the deed conveying the land to the defendant, he having paid to Johnson, clerk and master, the amount of the bid at the sheriff's sale, with interest, and Johnson, as clerk and master, having paid the money to L. H. Nunnelly and others, the beneficiaries in the suit. *Held,* that the defendant had a good title to the land as against the children of the judgment debtor.

FROM MAURY.

Appeal from the Chancery Court at Columbia. W. S. FLEMING, CH.

W. S. RAINEY and WRIGHT & PADGETT for complainants.

E. H. HATCHER, BARNETT & HUGHES, WILKES & BULLOCK and E. C. McDOWELL for defendants.

COOPER, J., delivered the opinion of the court.

Ejectment bill filed September 5, 1881, by the complainants, as the children and heirs of James P. Harlan, who died August 8, 1870. The land is claimed by the defendant Benjamin Harlan under a sale, June 13, 1870, by execution upon a judgment against James P. Harlan. The chancellor granted the relief sought, but held the land subject to a lien for the money paid by Benjamin Harlan, and ordered an account for rents and permanent improvements. Both parties appealed. The Referees report in favor of affirming the decree. Both parties except, opening the whole case.

Under a bill filed in the chancery court of Hick-

Harlan v. Harlan.

man county, by L. H. Nunnelly and others, benefi-
ciaries in a trust assignment made by W. H. Carothers,
against Carothers and others, to execute the trust by
a sale of the property, W. M. Johnson, the clerk
and master of the court, was appointed special receiver
of the property, and ordered to sell the same for the
benefit of the complainants, Nunnelly and others. At
the sale, James P. Harlan purchased largely, and, in
compliance with the decree of the court, executed his
note with security, due at twelve months, for the
amount of his bids. On August 9, 1869, judgment
by motion was taken on this note against James P.
Harlan and his sureties for $1,775.36 and costs. The
entry of judgment is headed with the name of the
case, L. H. Nunnelly and others against W. H.
Carothers and others, and recites the purchase by
Harlan of property at the clerk and master's sale,
and the execution of his note, which note is set out
in full, and shows on its face that it is given "for
property bought at sale of W. H. Carothers," and
made payable to W. M. Johnson, clerk and master
and special receiver. The judgment is that "W. M.
Johnson, as such clerk and master and special re-
ceiver," recover of James P. Harlan and his sureties,
naming them, the sum specified, and the costs of the
motion. On December 13, 1869, a *fi. fa.* issued on
this judgment to the sheriff of Maury county,
which follows the judgment in all respects, except that
it states the recovery as in favor of "L. H. Nun-
nelly and others," instead of W. M. Johnson, clerk
and master and special receiver. This execution came

to the hands of the sheriff on February 6, 1870, and was levied on the land in dispute on February 10, and returned too late to sell. On the back of the execution the sheriff acknowledges receipt of his levy fee, and the clerk and master, on November 15, 1869, gives a receipt for $100 on the judgment. On May 17, 1870, an *alias fi. fa.* was issued to Maury county, which came to the hands of the deputy sheriff on the 25th of the same month. This *fi. fa.* follows the other in all respects. It is endorsed with the style of the case in which the judgment was rendered, viz.: "L. H. Nunnelly and others against W. H. Carothers." The clerk and master also copied on the execution the levy made on the previous execution, preceding it with these words: "You will sell the following described tract of land. W. M. Johnson, clerk and master." Immediately below the levy, James P. Harlan wrote as follows: "I waive the necessity of advertisement, and accept personal notice, and agree that the within land may be sold in Columbia, at the court-house, on the second Monday, being the 13th of June, 1870. James P. Harlan." The deputy sheriff then makes a return that he sold the land accordingly, at the court-house in Columbia, on the 13th of June, 1870, when the land was bid off by W. C. Whitthorne "for the plaintiffs," at the sum of $1,864.55, being the amount of the principal of the debt and interest, "the cost paid to me by defendant." The proof shows that Whitthorne was the attorney for "Nunnelly and others," the complainants in the suit in which the judgment was recovered. James P.

Harlan died August 8, 1870. A. B. Cathey became administrator of his estate, and suggested its insolvency in 1871. In the month of June, 1872, and prior to the 13th day of that month, the defendant, Benjamin Harlan, paid to W. M. Johnson, clerk and master, the sum of $2,084.25, being the amount of the judgment against James P. Harlan, with interest, and this money was afterwards paid out by W. M. Johnson, as clerk and master, to Nunnelly and others, the parties beneficially entitled to the judgment, who received the same. Benjamin Harlan, on January 1, 1873, went into possession of the land sold under the judgment and execution as aforesaid, and has been in possession ever since. On December 26, 1874, W. A. Alexander, then sheriff of Maury county, and W. M. Johnson, as clerk and master, unite in executing a deed conveying the land to Benjamin Harlan, which deed was registered in September, 1876. This deed, after setting out the recovery of judgment in the chancery court at Centreville, Hickman county, Tenn., in the case of L. H. Nunnelly and others against W. H. Carothers, on the — day of August, 1870, by W. M. Johnson, clerk and master, against the proper parties, for the proper sum, recites the issuance of execution to the sheriff of Maury county, which came to his hands on May 23, and was levied on May 17, and the sale on June 13, and says that the land was then and there struck off "to W. C. Whitthorne for said W. M. Johnson." The deed then adds that in consideration of the premises, and of the sum of $2,084.25, paid by Benjamin Harlan to W. M. John-

son, the said Alexander, as sheriff, and the said ".W. M. Johnson, clerk and master, etc.," do grant and convey, etc.

In order to have all the facts before us on which the bill and cross-bill rest, it may be well to add that in June, 1872, Benjamin Harlan was not a judgment creditor of James P. Harlan. He had, after the death of James P. Harlan, filed his bill to enforce his lien as vendor on a tract of land sold to James P. Harlan in his lifetime, and, on August 31, 1873, recovered a judgment against A. B. Cathey, as administrator, for $14,774.88, and obtained an order for the sale of the land in satisfaction thereof. The land was sold accordingly on November 15, 1873, and bought by Benjamin Harlan at the price of $9,530.00, which sale was confirmed in the month of December following. This left a balance due on the judgment of over $5,000. The estate of James P. Harlan was largely insolvent, paying only a pro-rata of the debts filed against it. Benjamin Harlan did not file his decree for its pro-rata, being content, he says, to consider it extinguished by the excess of value of the land sold under the Nunnelly execution over the amount he had paid in satisfaction of the Nunnelly debt. The cross-bill of Benjamin Harlan was filed to have the amount paid on the Nunnelly judgment and the unsatisfied balance of the decree against the administrator declared a lien on the land now in controversy in his favor, if the complainants recovered the land.

The judgment under which the defendant, Benjamin

Harlan, claims title to the lands in controversy, it is conceded, is a valid judgment, and would therefore sustain an execution issued upon it. The contention is that the original and *alias fieri facias* actually issued so vary from the judgment in the name of the judgment creditor as to render them void. The judgment, it will be remembered, is upon a sale note given for property sold for the benefit of the complainant in the case of L. H. Nunnelly and others against W. H. Carothers and others, and is rendered in favor of W. M. Johnson, clerk and master and special receiver, to whom the note was made payable, although under the heading of the name of the case. The executions are in the name of "L. H. Nunnelly and others." And the first question is what was the effect of this variance?

There are loose remarks in the early reports to the effect that an irregular execution is void, while an erroneous execution is merely voidable: *Waite* v. *Dolby,* 8 Hum., 406; Freem. on Ex., sec. 43. But, as is well said by Mr. Freeman in the section cited, "there can be no just distinction between an irregular and an erroneous execution, for an erroneous execution is necessarily irregular, and an irregular execution is necessarily erroneous." There is a just distinction, he adds, between executions issued without authority, and executions issued under an authority which is erroneously pursued; but these two classes of executions cannot be accurately designated as irregular and erroneous. The former class is void; the latter may, with equal propriety, be termed either irregular or erroneous.

8—VOL. 14.

And this court has accordingly held · that the irregularity of process, and its erroneous and voidable character, will neither prevent an officer from justifying under it nor justify him in omitting to do his duty in its execution; it is otherwise where there is a total want of jurisdiction in the court over the cause: *Stevenson* v. *McLean,* 5 Hum., 332; *Lee* v. *Crossna,* 6 Hum., 281.

When there is a valid judgment on which an execution can properly issue, a mistake made by the officer, whose duty it is to issue it, must necessarily be a mere error or irregularity. Such an erroneous execution may, of course, be quashed upon direct proceedings for the purpose: *Jennings* v. *Ray,* 8 Yer., 85. But if the defendant fail to take this course, and allow the writ to be executed, the error will not, ordinarily, prejudice the title of a third person claiming under the sale, either by direct purchase, or through the judgment plaintiff. Whether it will affect the title of the plaintiff himself seems to depend upon the nature and extent of the error.

An execution must necessarily have a judgment to sustain it, and therefore it should appear from the execution what judgment is intended to be enforced. A purchaser at a sheriff's sale must show, in support of his title, a judgment, an execution thereon, and a sale and conveyance under such execution. When the execution is offered in evidence, it may vary from the judgment in some respects, and correspond with it in others. The test is one of identity. Did the execution issue on the judgment? If, from the whole

writ, and the whole judgment record, the court can feel assured that the execution offered in evidence was intended to be, and was issued and enforced as an execution upon the judgment shown, the identity is established. And where sufficient appeared on the face of the execution to connect it with the judgment, courts have frequently, says Mr. Freeman, disregarded variances in the names of the parties, in the date, or in the amount of the judgment: Freem. on Ex., sec. 43, and cases cited. And he adds: "Where an execution is not in proper form, or when it misrecites the judgment, as no one but the defendant can be injured, no one but he ought to be allowed to complain; and his complaints ought not to be heard when, by his apathy, he has allowed the rights of third persons to accrue, or even when he has allowed the plaintiff to be placed in a worse situation than if prompt complaint had been made." Id.

It has been held in this State that an execution on a judgment in favor of one party for the use of another, is not void because the latter recital was omitted. Stevenson v. McLean, 5 Hum., 332. E converso, an execution in favor of one party for the use of another on a judgment in favor of the latter alone will give a good title to a purchaser at the sale under the execution. Barnes v. Hayes, 1 Swan, 304. The omission from the execution of the name of one of the defendants in the judgment will not vitiate the title of the purchaser of land at the execution sale, in an action of ejectment, although the purchaser, and the plaintiff in ejectment, was also the

plaintiff in the judgment and execution : *Lee* v. *Crossna,* 6 Hum., 281. The same defect in the execution existed in *Wilson* v. *Nance*, 11 Hum., 189, where the plaintiff in the judgment and execution bought the land, and conveyed it to the plaintiff in the ejectment suit, who was held entitled to recover. · It has also been held that a sale of land under an execution for $319.06, based on a judgment for $328.18½, will give a good title to a third person who became the pur-.chaser, and to the assignee of his bid : *Trotter* v. *Nelson*, 1 Swan, 7. "It is apparent," says Judge Totten in delivering the opinion, "that the court, the parties, and the judgment are so stated and recited in the execution as to place the identity of the judgment and execution beyond any reasonable doubt." And he adds, quoting from a New York case : "The rights of a purchaser at such sale ought not to be affected by a slight variance between the execution and the judgment, which it would be a matter of course to amend upon application to the court." In *Maxwell* v. *King*, 3 Yer., 460, the execution was for costs, and part of the items endorsed thereon being in abbreviated terms, the writ was held void under a statute not brought into the Code: *Warder* v. *Millard*, 8 Lea, 581.

The execution in the case before us follows the judgment offered as evidence in every respect, except in the name of the judgment creditor. The judgment is rendered in favor of W. M. Johnson, clerk and master and special receiver, under the heading of L. H. Nunnelly and others against W. H. Carothers

and others, and shows on its face that it is upon a note given for the purchase of property at a clerk and master's sale in the cause. The record shows, what may fairly be implied from the judgment itself, that the sale and the recovery were for the benefit of the complainants in the suit. If the judgment had stated, immediately after the name and style of the nominal creditor, "for the use of L. H. Nunnelly and others," the case would have fallen directly within the principle of the decisions first above mentioned, L. H. Nunnelly and others being the real plaintiffs. But is not that fact equally shown by the caption of the judgment and the recitals on its face? And is it not apparent "that the court, the parties, and the judgment are so stated in the execution as to place the identity of the judgment and execution beyond any reasonable doubt?" In addition, the clerk proves that this is the only judgment in the court against the defendants named therein: *Corbin* v. *Pearce*, 81 Ill., 461. And the judgment-debtor recognized the validity of both executions by making payments on them, and adopted the last one by expressly consenting to a sale of his land under it.

There can be no doubt that where the judgment-creditor becomes the purchaser of property under an erroneous and voidable execution, the defendant may collaterally impeach the title thus acquired in some cases. Thus, if a *fieri facias* issue before a *distringas* for the specific property upon a judgment in an action of *detinue*, under which the plaintiff buys land, he cannot recover the land: *Waite* v. *Dolby*, 8 Hum.,

406. So, if the judgment be afterwards set aside :-
*Sexton* v. *Alberti*, 10 Lea, 452. The rule probably
applies only to errors which are not amendable, for,
as we have seen, the title acquired under ordinary
erroneous process is good, even if the judgment-cred-
itor be the purchaser, as against a collateral attack. It
might be otherwise upon direct action, promptly taken
to quash the writ, where the errors are not mere mat-
ters of form: Freem. on Ex., sec. 73, *et seq.* But
the title, even in the cases to which the rule applies
under our decisions, is only voidable while held by
the judgment-creditor by an estoppel or disability per-
sonal to himself. It would be good in a third per-
son acquiring it by purchase from him : *Wilson* v.
*Nance*, 11 Hum., 189. The title of Benj. Harlan
would not, therefore, be rendered null by a mere
voidable error, considering him as a purchaser from
the judgment-creditor. The proof is that he had no
notice of any error in the writs or irregularity in the
levy.

It is next insisted that the execution sale was void
for want of a levy of the execution. The original
*fi. fa.* in this case was levied on the land in contro-
versy. The *alias fi. fa.* has that levy endorsed upon
it, with the written direction of the clerk to the
sheriff to sell the land thus levied on. It is said
that the issuance of an *alias fi. fa.* was a waiver of
the levy : *Alley* v. *Carroll*, 3 Sneed, 110. In that
case the *venditioni exponas* was based on a levy made
over four years before, and after the issuance of sev-
eral intermediate *alias* and *pluries fi. fas.*, and the ques-

tion arose between parties claiming under different executions. As between the parties to an execution, the issuance of an *alias* is only *prima facie* evidence of a waiver of the levy, and may be rebutted: Freem. on Ex., sec. 271. That there was no intention to abandon the levy in this instance is manifest by the endorsements of the clerk on the *alias fi. fa.* The order of the clerk to sell the land described in the levy is, it must be admitted, not according to the usual forms. Mere form, however, will not be allowed to prejudice rights, if the intent and substance are clear. We know, as matter of history, that at one time in this State an *alias fi. fa.* was issued by merely writing the word *alias* on the previous *fi. fa.*, and sales thereunder were held valid: *Waller v. Whitesides,* 4 Hayw., 191; *Russell* v. *Stinson,* 3 Hayw., 56. So at one time in this State, in North Carolina, Pennsylvania, and perhaps other States, the practice was not to enter a judgment, but to understand one, and to issue a *fi. fa.*, as if the judgment were regularly entered: *Blackburn* v. *Allen,* 3 Hayw., 31; 2 Hayw., 377; *Cromwell* v. *Bank of Pittsburgh,* 2 Wall., Jr., 569. In this last case, Mr. Justice Grier, after stating that the usual form, upon an agreement or acknowledgment as in the case before him, would be "Sept. 13, 1820, judgment confessed," adds: "And I have known one prothonotary (a very worthy man, but somewhat eccentric in his orthography) who would have made the following minute only, "Cept. 13, gug't.""

Be this as it may, it seems certain, says Mr. Freeman, that the defendant may waive a levy, and that

his waiver estops him from objecting to the sale: Freem. on Ex., sec. 274; *Shamburger* v. *Kennedy*, 1 Dev., 1; *Treville* v. *Tilford*, 6 Watts, 468. James P. Harlan, it will be remembered, wrote immediately below the levy as copied by the clerk on the *alias fi. fa.*, as follows: "I waive the necessity of advertisement, and accept personal notice, and agree that the within land may be sold in Columbia, at the court-house, on the second Monday, being the 13th of June, 1870." This was a recognition, at the time, of the levy before him, and a waiver of any further levy, upon the sale being made on the day designated by him, as it was. The only land in the execution was the land described in the levy, and his consent was necessarily to a sale under that levy.

The sheriff's deed does recite a judgment, levy and sale as required by law to make it sufficient: *Byers* v. *Wheatley*, 3 Baxt., 160. It shows also that the land was bid off for W. M. Johnson, and he joins in the deed, which is conclusive evidence of the transfer of his bid to Benj. Harlan: *Morgan* v. *Hannah*, 11 Hum., 122. It is objected that the deed recited a judgment recovered in August, 1870, when the record shows a judgment in August, 1869, and a levy on May 17, before the *fi. fa.* came to the sheriff's hands on the 23d of May. But it has never been held that a mis-recital of dates would vitiate a sheriff's deed, which contains all the essential requisites, and where there is enough to identify the record and process described with the record and process produced. It would be absurd to make the rights

Harlan *v.* Harlan.

of parties turn upon clerical misprisions: *Jones* v. *Townsend,* 1 Leg. Rep., 179. The deed recites that the land was struck off at the sale "to W. C. Whitthorne for W. M. Johnson," while the return on the execution is that the land was bid off by Whitthorne "for the plaintiffs." But the return of the officer on the execution is not necessary to the deraignment of the purchaser's title, nor proof against him of a fact therein stated: *Mitchell* v. *Lipe,* 8 Yer., 179; *Hutton* v. *Campbell,* 10 Lea, 172. Besides, the nominal plaintiff in the judgment, being clothed with a special trust by the order of the court in the disbursement of the funds, would be the real purchaser under the bid, and his acts would be valid if the beneficiaries treated him as such, and accepted the money from him.

The report of the Referees will be set aside, the decree of the chancellor reversed, and the original bill dismissed with costs. The defendant, Benj. Harlan, will pay the costs of the cross-bill.