## Bennett's Branch Improvement Co.'s Appeal.
## Winslow & Crowell's Appeal.
## Woolverton & Tinsman's Appeal.
## Quinn & Co.'s Appeal.
## Fessler's Appeal.

1. An act created a corporation with authority to " clear out, improve and use Bennett's Branch" (a highway), to use dams erected and " erect new dams," and " may use all and each of said dams and the waters of said stream in the floating of saw-logs down the same, and generally shall and may have the right to straighten, deepen, crib and widen the channel of the stream aforesaid in such manner as they see fit for the purposes aforesaid." It fixed a rate of tolls for those using the stream, &c. *Held*, that the improvement was for the use of the public as a highway and the act was constitutional.

2. Discriminating between parties as to the use of the stream would be a violation of the charter.

3. A misuse of the privileges of the company for private purposes would not turn it into a private corporation.

4. The company having authority to improve the stream, would not lose its franchises because the improvement was not in fact beneficial.

5. The right to impose toll as a consideration for an enterprise for the benefit of the public, is a right of government.

6. Individual inconveniences must yield to the wants of the whole public.

7. The act authorized the taking of toll for timber floated " across" the stream, this did not mean only from one side to the other.

8. An act authorized the company in default of payment of toll " to seize, and sell at public sale, at any point they may select within this Commonwealth, enough of the logs, so floated, to pay the tolls due," &c. Timber owners floated logs through the stream into a boom without paying the toll. The logs were mingled in the boom with an immense amount of other logs of the owners and others. The company advertised a portion of them to be sold for tolls at a place distant from the boom where they could not be brought for inspection. *Held*, that the company were properly restrained from making such sale.

9. Klopp *v.* Witmoyer, 7 Wright 219, recognised.

March 31st 1870. Before THOMPSON, C. J., AGNEW, SHARSWOOD and WILLIAMS, JJ. READ, J., at Nisi Prius.

Appeals from the decrees of the Court of Common Pleas of *Lycoming county* : In Equity: No. 308, 330, 331, 371, to January Term 1870.

The cases in which these appeals were taken were upon similar pleadings and facts; that in which the opinion of the Supreme Court was delivered was a bill filed August 19th 1867, by Robert M. Winslow and Amelus G. Crowell against The Bennett's Branch

Improvement Company and B. C. Bowman, President, and John G. Reading, Treasurer of the Company. The other bills were by Woolverton & Tinsman, Quinn & Co. and Philip G. Fessler.

The Sinnemahoning creek and Bennett's Branch of the Sinnemahoning are both public highways.

On the 20th of April 1864, a law was passed to incorporate the Bennett's Branch Improvement Company.

The act gave the corporation power "to clear out, improve and use all and every part of Bennett's Branch of the Sinnemahoning creek, in the counties of Clearfield and Elk, from the mouth of the large run known as Bundy's run, above the saw-mill of Stephen Bundy, down the same to the mill known as Lindemuth's mill, below Caledonia, and they shall have the right to use all dams now erected by any of the members of said corporation upon said stream, and to erect new dams in such manner, and at such points as they may deem proper, and shall and may use all and each of said dams and the waters of said stream in the floating of saw-logs down the same, and generally shall and may have the right to straighten, deepen, crib and widen the channel of the stream aforesaid in such manner as they see fit for the purposes aforesaid." The act further provided, that the capital should be used in improving the stream and in paying expenses already incurred in building dams and improving the navigation. Portions of an act incorporating the Anderson's Creek Navigation Company, incorporated March 28th 1859, were made applicable to the Bennett's Branch. Those material were, that the company might demand from persons "using the stream for the purpose of running or floating lumber across its waters," twenty cents per thousand, which might be required in advance or security, and persons using the stream without performing these requisitions should be considered trespassers. The Bennett's Branch Company's charter further provided, that the tolls, if no demand should be made for payment in advance, should be paid in ten days after the lumber should be started in the stream, and in default of payment the logs should be subject to a specific lien for the tolls, and the lien might be enforced by retaining possession of them or by replevin wherever they might be found. An Act of March 22d 1865, authorized the company to improve the remainder of Bennett's Branch from Lindemuth's mill to its mouth, with the same rights as to the remainder as were conferred in relation to the original portion. A further supplement of April 9th 1867 authorized the company on a failure to pay tolls "to seize, and sell at public sale, at any point they may select within this Commonwealth, enough of the logs, so floated, to pay the tolls due, with penalties incurred, and costs of so doing, and, after so doing, they shall return the surplus, if any, to the owner of said logs: *Provided,*

That before such sale shall be made, public notice thereof shall be given by three written or printed notices."

The bill set out:

1. That the plaintiffs owned a tract of 1000 acres of timber land on Trout run, an affluent of Bennett's Branch, and had caused their logs to float down the run into Bennett's Branch and the Susquehanna river to the booms at Williamsport and Lock Haven.

2. That in the spring of 1867, before April 9th, they floated through Bennett's Branch, &c., to the said booms about 1,500,000 feet of logs, marked "E L. K.," which were yet in the possession of the boom companies.

3. That there was yet on the tract a large number of timber trees, whose value was in a great measure dependent upon the plaintiffs' right to float the logs upon said streams without paying any toll, &c., and it was their intention as their business might require, &c., to cut logs from the tract to be put into Bennett's Branch and float them to the said booms.

The bill then set out the various Acts of Assembly and the claims of the defendants under them.

11. That Reading, the treasurer of the company, about the 5th of August 1867, demanded from the plaintiffs $150 for using Bennett's Branch in floating the above-mentioned 1,500,000 feet of lumber, which they refused to pay; and the defendants had threatened that they would seize part of the logs and sell them to pay the tolls; and had advertised that there would be exposed to public vendue 35,000 feet of the plaintiffs' logs at Linden station, on the Philadelphia and Erie Railroad, on the 4th of September 1867, stating they had been seized for tolls due by plaintiffs "in running and floating their lumber across the waters" of Bennett's Branch.

12. That none of the logs had actually been seized, but they were still in the booms and are at different distances varying from a quarter of a mile to three miles from Linden station, and cannot be taken to Linden station without great expense; that it was not the intention of the defendants to take the logs to the station to be sold in the presence of the bidders, but to sell them to be taken from the large lot belonging to the plaintiffs and to others in the booms, and to sell them at a distance from the property, where the average quality could not be ascertained by the persons present.

13. That the defendants claimed to have toll from all logs which the plaintiffs may float on Bennett's Branch, and threatened if the toll should not be paid, to seize the logs wherever found and sell them.

14. That the defendants were not bound to remove obstructions from Bennett's Branch, or to make any specific improvement in it, to facilitate the passage of lumber; that they had not

in fact made any permanent improvement in it, and that the plaintiffs were not benefited in floating their logs, by any expenditure of the defendants on the stream.

They prayed that the court would declare the provisions of the act to be unconstitutional, so far as they authorized the defendants to take toll on the plaintiffs' logs or any other part of their property; or to give the defendants a lien on the property; or to decide for themselves when and how much toll might be due and what penalties might be incurred, and to execute the judgments in their own favor by seizing and selling the property wherever found without appeal; also that the defendants might be restrained from seizing, taking possession of or selling any of the said white-pine saw-logs of the plaintiffs, on the fourth day of September next, at Linden station, or at any other time or place whatever; and also from seizing, taking possession of or in any manner meddling with any lumber which the plaintiffs may hereafter float or drive upon and along Bennett's Branch of the Sinnemahoning creek, or any part thereof, on any pretence of tolls being due the said Bennett's Branch Improvement Company, for or on account of the passage of the said lumber on the waters of the said stream, or for or on account of any pretended penalties incurred by the non-payment of such tolls, or for or on account of any pretended lien upon any of the said lumber for such tolls or penalties; and for further relief.

On the 31st of August 1867, a preliminary injunction was awarded.

On 23d of September 1867, the defendants filed their answer admitting some of the averments of the bill and denying others. On the 16th of October, a general replication was filed and H. H. Cummin, Esq., appointed examiner. On the coming in of his report, April 20th 1868, he was appointed master. The master found the material facts substantially as set out in the bill. He also reported: "that a person standing at Linden station could get no accurate idea of the logs in the Susquehanna Boom and could not distinguish their marks nor tell a pine from a hemlock log.

"That the said defendants have a right to demand of the plaintiffs the sum of ten cents per thousand feet, board measure, for all logs that they shall put into Bennett's Branch of the Sinnemahoning creek at the mouth of Trout run, and if such claim is not paid, and if the Act of Assembly of April 9th 1867, is not in violation of the Constitution of the State of Pennsylvania, they may seize the logs wherever they may be found, and sell them at public sale for the tolls claimed and the penalties given by the Act of Assembly aforesaid, togther with the costs of sale.

"In the absence of legislative direction how such sale shall be made, other than the words 'public sale,' the master is of opinion that at least the same general rules of policy should govern which regulate the sales of personal property at 'public auction'

by a sheriff: 'That personal property must be in the power of the sheriff when he sells, and where bidders may inspect it,' is decided in Klopp *v.* Witmoyer, 7 Wright 225. If the defendants in the case now before the master are bound by this rule, they have failed in the first requisite, and the second is utterly impracticable. In this case the sale was advertised to take place at the Linden station, on the Philadelphia and Erie Railroad, and the property to be sold is described as 'thirty-five thousand feet of white-pine lumber, board measure, in the log, *in the Susquehanna Boom.*' The evidence discloses that these logs are mixed with perhaps one hundred and fifty million feet of similar logs, the only visible difference being the marks and quality, and are distant from the place of sale from one-fourth of a mile to three miles. A bidder desiring to inspect the property will first discover that it is not at the place of sale, but is in the Susquehanna Boom; if he goes there he will find logs packed to the bottom for miles along the river. By careful examination in walking over the logs he might discover a few logs bearing the mark E.L.K. He might search the boom from the shear to its mouth and not find one-half of the amount advertised; and if he did find the whole amount he would find them in the possession of the Susquehanna Boom Company, and so situated that possession could not be delivered to him if he should become the purchaser. The master is of opinion that the Act of Assembly of April 9th 1867, does not contemplate or authorize any such loose and irregular sale of the goods of a debtor as this case discloses." * * * He reported that the company since their incorporation had erected a number of "splash-dams," cribs and wharves, and had otherwise improved Bennett's Branch.

"The use of a splash-dam is to increase the flow of water in a stream, and where there is but one such dam on a stream this increased flow, or splash-flood, as it is called, is necessarily of short duration. The object of several splash-dams on a stream is that water may be collected and stored away to be used when needed, and to be used not only to increase the volume and force of a splash-flood, but also to make it of longer duration by running the water of one dam into the other. The object of the cribs or wharfing is to keep the floating logs in the channel of the stream by preventing them from running on bars, shallow places or low banks, and from passing out into the inlets and washes along such streams.

"That said works have facilitated the floating, generally, of logs upon and along the waters of the said stream, and the cost and risk of such floating has, in some degree, been lessened and diminished, taking into consideration the fact that the business of log-floating has so largely increased on that stream within the last few years.

[Bennett's Branch Improvement Co.'s Appeal.]

"The plaintiffs ask that the Acts of Assembly of April 20th 1864 and March 22d 1865, in so far as they authorize the corporation, defendants, to charge them ten cents per thousand feet, or any amount whatever, for floating their logs across the waters of the Bennett's Branch, and giving the said corporation a specific lien on the logs so floated for said tolls, shall be declared in violation of the Constitution of Pennsylvania, and in so doing they take upon themselves the burthen of proving beyond all doubt that they are so."

After citing a number of authorities, the master proceeded:—

"Bennett's Branch of Sinnemahoning creek is no less a highway now than it was before the improvements of the corporation, defendant, were put upon it; and the right of the plaintiffs and the public to float logs upon it, without let or hindrance, is the same as it was before the corporation, defendant, was incorporated.

"The state, undoubtedly, had authority to improve the navigation on Bennett's Branch of the Sinnemahoning creek, and she had power to authorize individuals, or create corporations, for that purpose, and give such individuals or corporations the right to exact tolls or charges from the persons using the stream in its improved condition; and, in this respect, the corporation, defendant, does not differ from railroad, turnpike, plank-road, slackwater navigation, and canal companies, whose works, in many instances, are only improvements upon roads or streams of water which were before, public highways either at common law or by statute.

"The master is, therefore, of opinion that the Acts of Assembly in question are not in violation of the Constitution of the State of Pennsylvania.

"The plaintiffs also ask that the Act of Assembly of April 9th 1867 which authorizes the corporation, defendant, to seize and sell logs floated over the waters of Bennett's Branch, shall be declared in violation of the Constitution of Pennsylvania. * * *

"The master has never heard questioned the constitutionality of the Act of Assembly of March 16th 1858 which authorizes commission merchants, and factors and all common carriers, or other persons having a lien upon goods, wares and merchandise, for or on account of costs and expenses of carriage or storage, &c., to sell the same, or so much thereof as may be necessary to discharge said lien, at public sale. * * *

"The master decides that the Act of Assembly in question is not in violation of the Constitution of the State of Pennsylvania.

"The plaintiffs may sustain great damage unless the defendants are restrained from selling their property in the manner complained of; therefore the master is of opinion that an injunction should issue to restrain the defendants, their officers, agents and servants, from selling at the Linden station of the Phila-

[Bennett's Branch Improvement Co.'s Appeal.]

delphia and Erie Railroad, in the county of Lycoming, any of the logs of the plaintiffs in the Susquehanna Boom."

The plaintiffs filed 10 exceptions, amongst which were:—

1. Because the master reports that the works of the corporation, defendant, "have facilitated the floating, generally, of logs upon and along the waters of the said stream" (Bennett's Branch of the Sinnemahoning creek), and that "the cost and risk of such floating has, in some degree, been lessened and diminished, taking into consideration the fact that the business of log-floating has so largely increased on that stream within the last few years."

4. Because the master has not reported, as the evidence before him establishes, that the nature and character of the works and alleged improvements of the corporation, defendant, are such as to injure the navigation of and embarrass the floating of logs along the said stream when withholding the water in their dams, and thereby inflict more injury on the public using the said stream for floating logs, but who have not the control of the works or splashes from the dams, than is compensated by any accidental benefits received by taking advantage of splashes made by the company for the use of any of its corporators or favorites.

6. Because the master has not reported that the Acts of Assembly relating to the corporation, defendant, only grant to them the right to exact tolls for crossing the waters of the said stream and not for floating down it.

7 and 8. Because the master reported that the several Acts of Assembly are constitutional.

The defendants filed an exception that the master reported that an injunction should issue restraining them from selling logs at Linden station.

After the argument of the case and exceptions, the court (Gamble, P. J., delivering the opinion) "decreed that the special injunction, heretofore granted by this court, restraining the defendants from carrying out the proposed sale at Linden station, on the 4th day of September, A. D. one thousand eight hundred and sixty-seven, be and the same is hereby made perpetual. And that the Bennett's Branch Improvement Company, B. C. Bowman, president, and John G. Reading, treasurer, and all other officers, agents and servants of said corporation, be and are hereby restrained from seizing, taking possession of or selling any of the saw-logs of the said plaintiffs, and also from seizing, taking possession of or in any manner meddling with any lumber which the said plaintiffs may hereafter float or drive upon and along the Bennett's Branch of the Sinnemahoning creek, or any part thereof, for the payment of any claim for tolls or penalties, until the same, if disputed, shall have been established and adjudicated by due course of law. And that the defendants pay the costs of this proceeding."

Both parties appealed.

The plaintiffs assigned for error, that the court did not set aside the report of the master for the reasons assigned in their exceptions, and in not declaring the several Acts of Assembly relating to the defendants to be unconstitutional.

The defendants assigned the decree of the court for error.

*R. P. Allen, H. W. Watson* and *J. W. Comly*, for plaintiffs.— The "splash-dams" without the incorporation were unlawful: Dubois *v.* Glaub, 2 P. F. Smith 238. There is no express authority in the act to erect "splash-dams," and it should be construed against the corporation and in favor of the public: Packer *v.* Sunbury & Erie, 7 Harris 218; Commissioners *v.* Gas Co., 2 Jones 320. Toll is what is paid for the use of something of a public nature: 2 Bouvier's Law Dict. (442) 589; Houck on Rivers 168. The government cannot take the property of one to give to another: Pittsburg *v.* Scott, 1 Barr 314; Sharpless *v.* Philadelphia, 9 Harris 167; Grim *v.* Weissenberg, 7 P. F. Smith 433; Musser *v.* Ferguson Township, 5 Id. 475; Tyson *v.* Halifax Township, 1 Id. 9; Bonaparte *v.* Camden & A. R.R., Baldwin Rep. 222; Norman *v.* Heist, 5 W. & S. 174.

*Armstrong & Linn, Maynard,* and *Eutermarks & Parker*, for defendants.

The opinion of the court was delivered, May 5th 1870, by

THOMPSON, C. J.—There are three other cases raising the questions presented in this case, that will be disposed of by our decision in this appeal. There is also an appeal by the company which was argued together with the above, and will also depend on the decision in this case, and will be determined therein.

The matter to which the strength of the arguments of the learned counsel for the appellants in the first three cases was directed, was the constitutionality of the act of incorporation, firstly; and secondly, to the constitutionality of certain provisions in one or more of the supplements to the act of incorporation if the original act should be held constitutional. The first of these questions depends upon whether the company was incorporated to improve the Bennett's Branch of the Sinnemahoning, for the sole use of the corporation, or for the use of the public as a highway. I regard the question of very easy solution. Indeed the learned master has given a conclusive reason why the improvement authorized by the Acts of 1864 and 1865, must, in the absence of any limitation in the acts, be regarded a public improvement, and that is, that the authority conferred on the company, was to improve by dams and cribs, the natural navigation of what was already by law, a public highway, open and free to everybody who chose to

use it as such, and as far as capable of being used. There is nothing in these acts of incorporation excluding the public. On the contrary, every provision of the act looks to the use of the improved navigation, by all who choose, on the sole condition of paying toll. The act prescribes the name and style of the corporation, authorizes it to use a common seal, defines the purposes of the corporation and the use of its works, and how it is to be governed; fixes the amount of its capital stock, the par of its shares, cedes to it the right of occupancy of one of its public highways, to be improved in the manner proposed, gives the public the right to subscribe to its stock, by requiring a book for subscriptions to be opened for that purpose at a certain time and place mentioned, and fixes a tariff of tolls to be paid by all persons passing over the waters of the stream, from the various points mentioned, when improved, with logs, lumber, &c. These things are the elements of a corporation designed for the public benefit, and not merely for the benefit of its promoters, excepting only in its earnings. Anybody and everybody may use it on equal terms. Discrimination between parties, as to its use, would be a violation of its charter. The improvement designed by the act, is beyond doubt, public, and any misuse of the privilege granted, if there be any, does not turn it into a private corporation for private purposes. While comparatively but a few companies of the kind we are considering, exist in this state, many exist in the states north of us, where driving disconnected logs is a more common mode of taking them to places of sale or manufacture, than with us. It seems to me, that such corporations often become a public necessity, in streams not naturally navigable excepting for short seasons, and where individuals are not allowed to improve them because of their public character. With the wisdom of such legislation, however, we have nothing to do. We are dealing with a question of power. We are to assume that the legislature had it, in this instance, and this presumption stands until disproved. The general power to incorporate improvement companies, is not to be questioned at this day. The hundreds which exist, and have for long years existed, precludes discussion of any such question. The power exists, and why may it not exist in favor of such a company as this? That has not been shown, and it ought to have been, by those who doubt or deny it. If the purpose be novel but legal, and provisions to suit its character be consistent, I see not how it can be illegal. That the state might have done all that is authorized by the act, is not disputed, and could not be. If she might, why might she not accept the assistance of citizens to do it, on being permitted to take such tolls as the state should allow to be taken; or which she might herself have taken if she had performed the work? That she could, will not be disputed. This doctrine is ably discusssed by Black, C. J.,

in Sharpless *v.* Philadelphia, 9 Harris 170. Without further elaboration, we concur with the court below that the position taken by the complainants against the acts incorporating this improvement company was not well taken, and was properly overruled.

The exception that the master did not find that the improvements made by the company, were injurious to the natural navigation of the stream, instead of reporting as he did, that they were beneficial to the descending navigation, had nothing to do with any question raised by the bill or answer. It was not charged, that if not beneficial, it ought to suspend the right of the company in the exercise of its franchises. There is no limitation of that kind in the act. The company having authority by law, to improve the stream in the manner prescribed, for the consideration of taking toll on the lumber and logs floated thereon, would not lose its franchises, because the improvement was in fact not beneficial, there being no such condition prescribed. The legislature determined that question in granting the charter, and all the franchises granted will remain, in the absence of any limitation, until taken away by some direct action for that purpose, legislative or judicial. These remarks apply equally to the fourth and fifth exceptions of the appellants.

The right to impose tolls as a consideration for the completion of an enterprise intended to benefit the public, is a right of government. It is conceded to the promoters, as a compensation for the benefit in contemplation of law, which every individual receives for an improved mode of transit of person or property. Individual complaints avail nothing against the right. These individual inconveniences must yield to the wants of the whole public. In most of these cases of improved navigation by companies, or the state, if not all, individuals have always been found who would claim to be as well off without such improvements as with them, and yet they are obliged to pass over them with their property, and pay tolls. There is no reason in this for impeaching the validity of the law. This results from the accidency of location, and of this nobody is to blame but the owner, and he must submit to all legal consequences incident thereto.

The exception also that the master should have found that the company was only authorized to take tolls for logs or timber floated "across" the waters of the stream, is somewhat hypercritical. It cannot be held to mean floating or crossing over from side to side of the stream, as the word imports; a thing not needed, or within the purview or purpose of the act. The words are found in the same connection, in the supplement to the act incorporating the Little Anderson Creek Navigation Company, a precisely similar improvement company, and was adopted by the framer of the act incorporating the Bennett's Branch Improvement Company. The object of this act, as was the Anderson Creek Com-

pany, was to improve the descending navigation of the stream, for logs and lumber, and not to improve its crossings with lumber, and this is so said in every part of the act, but in this single instance. We must construe the expression in subordination to the declared purposes of the act, and in accordance with all its provisions, and so the learned master and court construed it, and they could do no otherwise.

These views determine the several appeals of the complainants against them, and they are to be dismissed at their costs.

The company's appeal will now claim our attention. The court below enjoined the company as prayed, from selling the logs of the complainants, as advertised by it at Linden station, on the 4th day of September 1867, and from any future seizure and sale of the logs of the plaintiffs, for the payment of any claim for tolls and penalties, until the same, if disputed or denied, shall have been established and adjudicated by due course of law.

The injury impending from this alleged attempt to sell logs to compensate tolls due and unpaid and for forfeitures, in the absence of the property, either potentially or in fact, was thus redressed by the perpetual injunction granted in the case, and this we think the court was right in doing. In Klopp *v.* Witmoyer, 7 Wright 219, it was held that personal property must be in the power of the sheriff when he sells, and where bidders may inspect it. There may be exceptions to the rule, but nothing appears in this case to bring it within any conceivable exception. Indeed, the master reports that the sale was to be made without the possibility of the logs being present. They were mixed with an indiscriminate mass of millions of feet of logs, belonging to many and various owners, and that it was not possible by any probable force, that the logs of the complainant could have been selected and taken up the stream to the place of the anticipated sale. The sale advertised was therefore a contemplated sale of lumber, where it could not be inspected by, nor delivered to, the purchaser.

We think the injunction granted was all that the case required. That the defendant should, in the future, be enjoined from using the remedy of the act by seizing and selling logs or lumber without writ or judgment, applies properly to a threatened exercise by the company of the power, and is not so charged in the bill. I regard this as a somewhat doubtful right in view of the clause of the bill of rights, which declares that no one "shall be deprived of his life, liberty or property, unless by the judgment of his peers, or the law of the land."

To determine this point now, however, is not required to give the complainants the benefit of their bill. Their property, imperilled by the proposed sale, is relieved effectually by the injunction against selling in the absence of the property, and we do not

feel any necessity to determine the question of the future right of the company to seize and sell for tolls, &c., even where the property is present and in view, without writ and judgment. For this case that is not necessary. There are several other companies in this Commonwealth possessing like powers with those in this act of incorporation. Besides, there is the law of common carriers, which authorizes sales of goods for charges, without judgment or writ, and other summary remedies in other cases, which are to some extent at least involved in the constitutional question sought to be raised here, because of similarity of enactment and practice. For the present we will not decide this question, affecting so many interests, but leave it to some future action of parties interested, to bring it distinctly before the court when we can command a full bench.

And now, May 5th 1870, in the first of the above-mentioned cases, viz., Winslow & Crowell's Appeal v. Bennett's Branch Improvement Company, No. 508 of August Term 1867, in the Common Pleas of Lycoming county, and the Appeal of Elijah B. England and Jacob Brown v. The Same, No. 599 of the same term; and of George Quinn & Co. v. The Same, No. 510 of the same term; and of Woolverton & Tinsman v. The Same, No. 511 of the same term; and Philip G. Fessler v. The Same, No. 512 of the same term, the decrees of the court below are severally affirmed, and the appeals are dismissed at the costs of the complainants to the several bills.

And the appeal of the Bennett's Branch Improvement Co. is affirmed as modified hereinafter.

Now, May 5th 1870, this came on to be argued in this court on appeal, and was argued by counsel, and was considered by the court, and it is now ordered, adjudged and decreed that the special injunction granted by the Court of Common Pleas of Lycoming county, in this case, be made perpetual, and that the defendant be perpetually enjoined, its officers and agents, from selling as advertised the logs of the plaintiffs, in their bill mentioned, at Linden station, the logs not being present, and liable to inspection by bidders, or delivery to purchasers; and the defendants are ordered and decreed to pay the costs in the court below and of this appeal.                              Per CURIAM.