# McGinnis *versus* Prieson.    McGinnis's Appeal.

1. To continue the lien of an execution it is not necessary that the personal property levied on should be taken into actual possession. It is sufficient if it be forthcoming to answer the exigencies of the writ. The leaving the goods therefore in the possession of the defendant by the permission of the plaintiff will not divest the lien of the execution, unless there be fraud.

2. This rule applies to a constable's levy when made and extended, and such levy will take priority of a subsequent levy by the sheriff.

June 13th 1877. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ.

Appeal from the decree of the Court of Common Pleas of *Clinton county:* Of May Term 1877, No. 107.

William McGinnis obtained a judgment against Adolph Prieson, for $9779.20, on the 12th day of August 1876. On the same day he issued a writ of fieri facias, and levied on the personal property

[McGinnis *v.* Prieson.]

of Prieson, consisting of household furniture, as well as a lot of fixtures, drugs, medicines, &c., in a drug store. All the articles in the drug store were sold by the sheriff on the 28th of August 1876, for $2614.76. Out of the proceeds of this sale Jonas Zindel claimed $216.17. Zindel had obtained three several judgments before an alderman against Prieson and one Ira Mason for about $200. Upon these judgments executions were issued by the alderman and placed in the hands of the constable on the 3d of July 1876, and were returned by the constable as stayed by the order of plaintiff. On the 26th of July 1876 executions were again issued to the constable, who on the 7th of August 1876 endorsed thereon the following levy : " August 7, '76. I have this day levied on the following personal property belonging to the within-named defendant : one soda-fountain and fixtures, seven show-cases and contents, a lot of whiskey, brandy and wines in bottles and barrels." On each of said executions there was also the following endorsement : " Aug. 15, '76. Returned with a levy endorsed, on want of time." On the 15th of August three other executions were issued on the same judgments, upon each of which appears the following endorsement: " See old execution August 7, '76. I have this day levied on the following personal property belonging to the within-named defendant," naming the articles enumerated above.

McGinnis contended that there was no levy made by the constable upon the articles specified in the return made by him, and to establish this fact and contradict the return, called Prieson, who testified: " He never notified me that he had made a levy ; he never indicated to me that any part of the goods in my store were under levy. I went on and used the goods in my store until closed by the sheriff, the same as I always did for the same purpose. If a customer had desired to purchase anything in the show-cases or the liquors, it would most certainly have been sold to him. He never notified me that he would make a levy, but he showed me the papers and said if they were not fixed up he would have to make a levy. This was something like five or six days before I was closed up. I told him he had better get an indemnifying bond before he made a levy upon my goods. He did not make a levy at that time to my knowledge, because he came in two or three days after and asked me whether I had seen Mr. Zindel or Mr. Mason. There was some negotiation at that time in reference to taking notes for the amount of these executions."

The constable, on the contrary, testified : " I made a levy on the old executions, on each of them, and the levy was endorsed on the back of each of the executions. This levy I endorsed on each of the old executions before I returned them. The old executions were issued on the same judgments and for the same amounts (except that there were a little more costs) as those offered in evidence here. As far as the things levied upon I did not tell any

[McGinnis v. Prieson.]

one. I told Mr. Prieson I would make a levy, and made it in his presence. He then told me to get a bond. I did not tell him I had made a levy after I had made it. I left the goods in the store, in Dr. Prieson's possession. All kinds of things that are usually kept in drug-stores in show-cases were in the show-cases upon which I levied. The goods were left by me in such a way that Dr. Prieson could use them. I was not directed by any one not to remove the goods. I saw the goods almost every day after I had levied upon them before the sheriff closed the store. I saw the doctor several times, too, and talked to him about it. There was nothing to indicate to a stranger that the goods were under a levy. I never itemized the contents of the show-cases. I never took the number of the bottles and barrels of brandy, whiskey and wine. The liquors in bottles that I levied upon were on the right hand of the store, and those in barrels were in the cellar. I was not in the cellar that day, but I was the week before I levied— probably it was ten days before. I had the levy on a piece of paper, and copied it on the executions. The memorandum was made in Prieson's store. The memorandum is either lost or mislaid. Dr. Prieson was in the store when I made it. I told him I'd make a levy, and I made it in his presence, he on one side of the counter and I on the other."

It was further contended by McGinnis, that even if the levy was made as stated in the return of the constable to the executions issued on the 26th of July, that the constable having returned the executions without proceeding to sell, the lien of the levy was gone when the writs were returned on the 15th of August.

The court, Mayer, P. J., in an opinion, said: "The lien of Zindel's executions had attached before McGinnis's writ reached the hands of the sheriff, and the constable could have insisted on his right to sell the goods levied on as against the levy made by the sheriff on the same goods. But he did not assert his right and returned these executions on return day with levy and not sold for want of time. The justice issued other executions upon which he endorsed and preserved the levy made on the former executions. The sale was made by the sheriff on the 28th of August, being eleven days after the levy made by the constable on Zindel's executions, and nine days before the lien of the levy had expired. It is of no consequence that the sale was not made by the constable. The lien of his levy would attach to the proceeds of sale. Being of the opinion that the execution of McGinnis is postponed in the distribution of the proceeds of sale to the three executions of Jonas Zindle v. Adolph Prieson and Ira Mason, it is ordered and directed that that portion of the proceeds of sale of the personal property of Adolph Prieson in his drug store realized from a sale by the sheriff of the goods and chattels levied upon by the constable on the executions of said Zindel, be applied and

4 NORRIS—8

appropriated to the payment of the debt, interest and costs of said executions.

From this decree this appeal was taken.

*Jesse Merrill*, for appellant.—The goods named in the alleged levy were not in the view of the officer at the time of the levy; there was no schedule of the goods made and returned; the levy was not "public, open and unequivocal," and there never was a seizure of the goods, all of which are requisites to a valid levy : Lowry *v.* Coulter, 9 Barr 351; Schuylkill County's Appeal, 6 Casey 359; Duncan's Appeal, 1 Wright 502; Truitt *v.* Ludwig, 1 Casey 149; Parys's Appeal, 5 Wright 277; Wood *v.* Vanarsdale, 3 Rawle 401.

*T. T. Abrams*, for appellee.—To constitute a good levy on personal property it is not necessary that the goods should be immediately removed or taken in possession, but it is sufficient if they are within the control of the officer at the time of the levy and it is followed up with reasonable diligence : Wood *v.* Vanarsdale, 3 Rawle 401; Trovillo *v.* Tilford, 6 Watts 468; Linton *v.* Commonwealth, 10 Wright 294; Dorrance *v.* Commonwealth, 1 Harris 160; Keyser's Appeal, Id. 412.

Where an act is required to be done by an officer, the law will presume that it was rightly done : Fetler *v.* Patton, 8 W. & S. 458; Bull. N. P. 298; Williams *v.* East India Co., 3 East 199; 2 Best on Presumptive Evidence, p. 633, pl. 357; Hartwell *v.* Root, 19 Johns. 345; King *v.* Hawkins, 10 East 216.

Mr. Justice WOODWARD delivered the opinion of the court, October 1st 1877.

In the distribution of the fund produced by the sale of Adolph Prieson's property, the first question that arose was one of fact. Jonas Zindel, the appellee, asserted a right to participate in the distribution, by virtue of the lien of three executions issued to constable Keller, in judgments, obtained on the 3d and 13th of June 1876, before a justice of the peace. On behalf of the appellant this right was denied, on the ground that no levy had been actually made. Prieson testified that although the constable was at his store, no intimation of an intention to make a levy was given him, and that he remained in possession until the store was closed by the sheriff. On the other hand, the executions which were issued on the 26th of July 1876, exhibited an endorsement on each of a levy made on the 7th of August on "one soda-fountain and fixtures, seven show-cases and contents, and a lot of whiskey, brandy and wines in bottles and barrels." On each of the three executions issued on the 15th of August the same entry was copied, and reference was made to the former executions and the original endorse-

ments. In support of his return, the constable swore that he made the levy, gave notice to Prieson of the articles seized, made a memorandum of them in his presence, and from that memorandum endorsed the levy on the executions. The court below accepted the record of the constable's official action, corroborated as it was by his sworn statement, as decisive of the question in dispute in favor of the appellee. It cannot be said that the decision was based on unsatisfactory grounds. The parol evidence was conflicting, and only due weight was given to the return made by the constable, in the discharge of his legal duty, on the 7th of August, five days before the appellant acquired any adversary right by placing his execution in the sheriff's hands. " It is a well-settled rule of law," it was said by Justice KENNEDY, in Fitler v. Patton, 8 W. & S. 455, " that where any act is required to be done by any one, and espe- cially by an officer, within a limited time, which were he not to perform as required, would render him guilty of a criminal neglect of duty, the law will presume that it was done rightly, and will throw the burthen of proving the contrary on the other side."

It was also objected to the application of the fund to the claim of the appellee, that, as there was no actual seizure of the property, and the defendant in the executions was left in its possession, the levy was not legally made. A reference to rules which precedents have firmly established, sufficiently answers this objection. It was said by STRONG, J., in Commonwealth Insurance Company v. Berger, 6 Wright 292, that " strictly, it is true, a levy is an actual seizure ; but in this state it has been held that if the officer, with the goods in view and within his power, assert that he makes a levy upon them, his acts are equivalent to a levy." This statement of the legal principle is warranted by the cases of Wood v. Vanarsdale, 3 Rawle 401, and Trovillo v. Tilford, 6 Watts 468. To continue the lien of an execution, it is not necessary that the personal pro- perty levied on should be taken into actual possession ; it is sufficient if it be forthcoming to answer the exigencies of the writ : Dor- rance's Administrators v. The Commonwealth, 1 Harris 160. The mere leaving in the possession of the defendant of goods levied upon, with the permission of the plaintiff, will not divest the lien of the execution, unless there be fraud : Keyser's Appeal, 1 Harris 409.

While there has been no attempt to prove any fraudulent agree- ment, practice or contrivance on the part of the appellee, it is insisted that his claim should be postponed, because all the pro- ceedings on the executions indicated an intention not to sell, but to cover up and secure a lien upon the goods made subject to the levy. Two of the appellee's judgments were recovered on the 3d of June 1876. The third was recovered on the 13th of that month. Exe- cutions were issued on the 3d of July, and were stayed on the 22d. On the 26th of July the second series of executions went out. They were levied on the 7th of August, and were returned with the levy

[McGinnis *v.* Prieson.]

endorsed on each, and with the entry "on want of time," made
by the constable as part of the return, on the 15th of August.
The same day the justice issued the third series of executions, and
the levy made on the 7th of August was immediately endorsed on
the new writs.    Meanwhile the appellant's execution was issued to
the sheriff on the 12th of August.    All of Prieson's personal pro-
perty was levied on and taken into the sheriff's custody at once, and
was sold on the 28th of August.    Of the disposition made of the
first writs the appellant is not in a position to complain.    When his
execution passed into the sheriff's hands, the property was bound
by the lien of the constable's levy, which the terms of the 18th sec-
tion of the Act of the 20th of March 1810 would have preserved
for twenty days from the 7th of August.    It is not necessary to
inquire what effect upon the appellee's rights would have been pro-
duced by the sheriff's sale on the 28th of August, if the constable
had retained the second series of writs in his hands until that time.
Those writs were returned for reasons that were satisfactory to the
magistrate on the 15th of August, and fresh ones were issued in
their stead.    The consequence was that the appellee stood in the
same position on the 28th of August that he would have occupied
if the sheriff's sale had been made within twenty days from the
date of the constable's levy.    The 18th section of the Act of 1810,
after authorizing a levy, fixing the extent of its lien, and empow-
ering the officer to take a bail-bond, and in default of such bond
to sell, made this provision for the contingency of the loss of the
lien from lapse of time : "But should the lien be expired, the jus-
tice may issue an *alias* execution, which may be proceeded on as
aforesaid."    In all the steps that were taken it is not seen how
anything was done by the appellee to involve his claim in hazard.
He took no personal action after staying the first executions, and
the appellant had not then obtained his judgment.    Nor did any-
thing in the proceedings of the justice and constable indicate any
other purpose than the collection of the judgments of the appellee
by the application, in entire good faith, of ordinary and familiar
legal process.    The legitimate end of an execution is to have the
money at the return of the writ, or, for good reasons set forth in
the return, to hold the property for another writ, and not to favor
the debtor by giving him time or a deceptive appearance of owner-
ship : Lantz *v.* Worthington, 4 Barr 153.    For all that appears,
this "legitimate end" was kept in view throughout these proceed-
ings.    Even if there had been official irregularity or undue delay,
the appellee would not have been held responsible.    An execution
will not be postponed for the officer's default.    His procrastination,
even by the sufferance of the creditor, is not fraudulent *per se*, and
postpones only when the creditor directs him not to proceed :
McCoy *v.* Reed, 5 Watts 300.    The lien of these executions was
legally acquired and was duly preserved until the seizure of the

[McGinnis *v.* Prieson.]

goods by the sheriff withdrew them from the constable's control. In the entire absence of affirmative proof of any action on the part of the appellee that would bar his rights, he was entitled to take the amount of his judgments out of the proceeds of the sheriff's sale.

> Decree affirmed, at the costs of the appellant, and the appeal dismissed.