## Frank Samuel v. Knight & Co., Appellants.

*Execution—Essentials of a valid levy.*

A levy to be good must be made in such a way that the officer has the
property within his power and control or within his view, and after hav-
ing it so, he makes a levy upon it and follows it up within a reasonable
time by taking possession in such a manner as to apprize everybody of
its having been so taken in execution.

*Execution—What constitutes a levy—Province of court and jury.*

Seizing part of the goods in the name of the whole on the premises, is
a good seizure of the whole; but when the property in dispute was not
on the premises of the defendant in the execution and not identified by
description it should be seen by the officer to perfect a levy of it, and the
fact being disputed as to whether or not it was included in the levy,
the question is one for the jury, to be determined on the evidence and
without the expression of a dominating opinion from the trial judge.

*Execution—Levy—Sale of reversions—Question for jury.*

The sale in bulk by the sheriff of items of property under the designa-
tion of "reversions" does not pass title thereto if the property so sold
was not levied upon, and whether so levied upon and subsequently sold
was for the jury.

*Charge of court—Conflicting inferences—Undue emphasis by court.*

Trial judges are not compelled to weigh their utterances regarding the evidence in the exquisitely balanced scales sometimes employed by ingenious counsel to discover whether too much or too little has been said; but when evidence is conflicting and the inferences to be drawn therefrom are reasonably capable of different constructions, it is error to confine the jury to one view of the case when there is more than one which they should consider; and in such case, it is error specially to emphasize the theory of the plaintiff and ignore that of the defendant.

*Practice, C. P.—Charge of court—Undue comment on testimony.*

In many cases it is not only proper but it is the plain duty of the trial judge to comment upon the testimony, but in a civil case, where points requesting binding instructions are refused for both plaintiff and defendant, the case should go to the jury to determine which has the better case on the preponderance of evidence freed from the opinion of the court on that subject.

Argued Oct. 11, 1898. Appeal, No. 55, Oct. T., 1898, by defendants, from judgment of C. P. No. 4, Phila. Co., Sept. T., 1896, No. 36, on verdict for plaintiff. Before RICE, P. J., ORLADY, SMITH, W. W. PORTER and W. D. PORTER, JJ. Reversed.

Trespass. Before WILLSON, J.

It appears from the record and evidence that this action of trespass was brought to recover damages for the conversion of two carloads of scrap iron; that plaintiff claimed title under a sheriff's sale; the defendants, under subsequent bill of sale made by the defendant in the execution, and the question at issue was whether or not the iron had been included in the sheriff's levy and subsequent sale. The scrap iron in question was not on the premises of the defendant in the execution, but was situated upon private property across a public road. As alleged by the defendants, it was never seen by the sheriff nor was it specifically sold. The sheriff's deputy testified that when he made the levy he took things down in the office from a list given him by one of the clerks. The levy as offered in evidence by plaintiff's counsel, was as follows: " Levy made July 18, 1896, on Ridley Iron Company, about 150 tons Muck bar, about 300 tons coal, about two car loads scrap iron, about 75 tons iron ore, three car loads of charcoal, boat load of sand, car load of sand, one-half car clay, three barrels of oil and about

VOL. IX—23

354 SAMUEL *v.* KNIGHT & CO.

Statement of Facts—Charge of Court. [9 Pa. Superior Ct.

thirty tons of scrap ends, and all other goods under levy and subject to execution."

Both parties asked the trial judge for binding instructions, both of which requests were refused by him, the court, WILSON, J., charging the jury as follows:

Gentlemen of the jury, this case is not to be decided by you because of anything which is not in it, or the absence of any witness who is not here. You ought to be careful to keep to the line of what has appeared before you, what you have heard and what you have seen. It would not be fair to decide this case against Mr. Samuel, who claims to have bought the property at sheriff's sale, because if Mr. Samuel had been here something might have been drawn out of him by cross-examination. That may be so or may not; it would not be just for you to pass on the case and determine it against his rights because of anything of that sort. Mr. Samuel was a judgment creditor of the Ridley Iron Works. There is nothing to attack the bona fides of his judgment. He had a perfectly good judgment, according to anything and everything mentioned in this case. The judgment, as I understand it, was for somewhere about $7,000. He issued his execution. [The sheriff went to the establishment of the defendant in the execution and made the levy. He says that he made up a list, which was furnished him by the officers of the company. In the theory of the law his levy bound everything there and about there. It is also the theory of the law that it bound everything within the limits of his bailiwick and county. All the personal property was bound by it. It is not necessary to go to any such extent as that. The levy certainly bound everything which was there within sight, which belonged to the concern and which was ordinarily used in its operations, or which was there at the time evidently and obviously the property of the corporation, and that, whether it was described in detail in the list which the sheriff or the deputy sheriff made up, or not.] [2] The deputy says he made out such a list, and, as I remember his testimony, he said he put somebody there in charge of the property. It is undoubtedly the duty of the sheriff, after he makes a levy, to follow it up in a reasonable time and make out a detailed list of the property which he levies on, but if he hap-

pens to omit an item or two, it does not follow that the levy did not cover it. The question is whether he substantially describes and takes into his possession and controls the articles which are subject to the levy. He says he made a sale, and at that sale Mr. Hitner says, acting for Mr. Samuel, he bought the property. There may have been a few articles bought by some other parties, but the bulk of the purchases were made by Mr. Hitner. Mr. Hitner says he was acting for Mr. Samuel.

[The question is, in the first place, whether this lot of old iron was levied on and sold. That is the first question which was presented to you and argued by counsel. If this old iron was lying there on an adjacent lot, placed there for the convenience of the company, was there at the time when the levy was made, I do not think you would be doing violence to any principle of law or to any fact which appears in the case, if you regard the levy as having been made upon that lot of iron. It seems so to me. I should so regard it if I were in your place.] [3] Then the question comes up as to whether it was sold. If it was not sold, if it cannot be fairly said to have been sold, and the sheriff left the place and abandoned the property, I would say that the defendant could hold the property if he purchased it subsequently in such a way as indicated he acted in good faith and bought it. Was it sold? [The sheriff says the items were put up and sold and then there was a sale of what was left. If you believe this property was lying there—old iron—lying across a street, we will say, but still that it belonged to this concern, the Ridley Iron Works, and that it was, as I believe it was, included in the levy, and the different articles of property were sold, and then, as the deputy sheriff says what was left was sold to Mr. Hitner, representing Mr. Samuel, I should say that passed good title to Mr. Samuel.] [4] If he bought in that way, he acquired a good title to it, a title such as could be maintained. If it was abandoned by the sheriff, if it was not sold, was not included, was not thought of, was not regarded at all as any of the property levied upon, was not considered in the transaction, was not contemplated between the parties in the sale and purchased by Mr. Hitner, then that is another matter, and your conclusion might be different.

If Mr. Samuel did buy this lot of old iron through Mr. Hit-

ner as part of the property which was levied on and sold, then, of course, Mr. Knight has no title to it, and your verdict should be for the plaintiff. That does not mean that Mr. Knight did anything intentionally wrong. He had a claim against the Ridley Iron Works. He sold them coal, and was entitled to be paid for it, and he wanted to get what he could on account of his bill. At the same time he was aware of the sheriff's sale, and he went down there and took the risk of this matter, because it appears that he inquired about it, inquired whether this lot of old iron had been sold, and he was advised by an attorney that it had not been. But that does not conclude the case, that does not make his right any better than it would have been otherwise. However, it does appear that he made his inquiries, and he went into the transaction with his eyes open, and he took this lot on account of a bill which was existing.

If, in view of what I have said to you previously, you think that no title had passed to Mr. Samuel, and that the sheriff had abandoned his levy, if that clearly appears, then the Ridley Iron Works had a right to pay their bill in that way as far as they could. [I confess it seems to me, looking at the case from my standpoint, not intending to take it from you, but intending to leave it to you to decide on what the evidence and law as I have stated to you justify, that the plaintiff has made out a better case here, and that your verdict ought to be for him, with an assessment of damages equal to what the value of the property was at the time of the taking of it by Mr. Knight, with interest from that time.] [5] Mr. Knight says he bought the property and sold it again for what he thinks was a fair market value, that is, $380. It does not seem to me there would be any injustice in taking the amount that it realized at that sale, under the testimony, as representing fairly and justly between the parties the true value of the property taken. That is upon the theory that the plaintiff is entitled to a verdict. If the plaintiff is not entitled to a verdict, then your verdict should be for the defendant.

Verdict and judgment for plaintiff for $380. Defendant appealed.

*Errors assigned* were (1) to the charge as a whole. (2–5) To portions of the judge's charge, reciting same. (6) In declin-

ing point submitted by defendants, which point was as follows: "Under all the evidence in the case the verdict must be for the defendants."

*Ellis Ames Ballard*, with him *Rufus E. Shapley*, for appellants.—The appellants were entitled to binding instructions. In Lowry v. Coulter, 9 Pa. 349, the facts are identical with those in the present case. See also Carey v. Bright, 58 Pa. 70. Wood v. Vanarsdale, 3 Rawle, 401, has been recognized as a leading case on the subject of paper levies; this case is cited with approval in Duncan's Appeal, 37 Pa. 500, and in almost all the later cases.

Counsel for both parties at the trial agreed that the question raised was one of law and not of fact. The learned trial judge, however, refused to affirm either point for binding instructions, but, so far as plaintiff's request was concerned, he accomplished the same purpose by taking every question of fact from the jury as he successively treated it in his charge, and by so framing the whole charge as to make it impossible for a jury which respected and followed the court to bring in a verdict other than for the plaintiff.

There was no legal levy upon and sale of the goods in question to the plaintiff and that, therefore, plaintiff having failed to make out his title and the defendant having made out a good title, the defendant was entitled to binding instructions, and the sixth assignment of error must be sustained.

In any event the plaintiff was not entitled to binding instructions, and that the court erred in delivering a charge which substantially amounted to such, and that the first assignment of error must be sustained; and

If there was an issue of fact to be submitted to the jury, it was not fairly submitted, and the second, third, fourth and fifth assignments of error must be sustained.

*Lewis Lawrence Smith*, for appellee.—The appellants have cited most of the more important cases on this subject, but their inferences from them are entirely erroneous. If the law be as they contend, not one levy in ten would be good. The cases do not support such an impossible position. The leading case is Wood v. Vanarsdale, 3 Rawle, 401, which was a contest be-

tween the execution creditor and an assignee from the defendant. The sheriff levied on defendant's goods in his store, but made no inventory of them nor left any one in charge. He levied on the goods at defendant's house, taking only a partial inventory.

This case shows that "having the goods within his control or power" means that they are at the time of levy susceptible of manual seizure, or that he had the power of preventing their improper removal.

This latter feature is emphasized by Duncan's Appeal, 37 Pa. 500, and Linton v. Com., 46 Pa. 494.

If appellants' view of the law is sustained, then the usual practice of making a levy must be abandoned. Under that view, the sheriff must, in every case, make an inventory of each item, at the time of levy or later; must make an actual seizure, at the levy or subsequently, and that an actual seizure does not mean putting a watchman on, but something else, not clearly defined, by which the sheriff acquires a much more immediate and powerful grip on the property levied upon, and that if he omits any of these things, a sale will pass no title even as against a defendant who is willing to dispense with them.

But, even if the law were otherwise than the cases indicate, it would be a fact for the jury to determine whether the levy and sale in this case passed title to plaintiff. The law was correctly stated, and the question of fact fairly submitted to the jury. The jury have found in favor of the plaintiff, and that ought to be fully sufficient. It is entirely proper for a trial judge to express his opinion upon the facts, provided he leaves their determination to the jury, as was done in this case. This has been held in Didier v. Pennsylvania Co., 146 Pa. 582, Fredericks v. R. R. Co., 157 Pa. 103, and Price v. Hamscher, 174 Pa. 73, in the last of which cases the authorities are collected.

OPINION BY ORLADY, J., January 18, 1899:

The plaintiff issued an execution against the Ridley Iron Company, Limited, and the same day the deputy sheriff went to the office at the rolling mill of the defendant and received from the officers in charge a descriptive list of property which he entered in his levy book as "muck bar, coal, iron ore, charcoal, sand, clay, oil," (which items are not in controversy in this

issue) and also "about two carloads scrap iron" and "all other goods under levy and subject to execution."

At the sale which followed, the plaintiff became the purchaser of practically all of the defendant's personal property which was sold by the sheriff, and subsequent to this sale, the defendants purchased from the Ridley Iron Company, Limited, two carloads of scrap iron, which was located outside of the rolling mill property, on a lot of ground near to and separated from it by a road about forty feet in width, which lot was leased by Jared Swanger—a member of the iron company—as there was not enough space on the mill property, on which to pile the scrap iron.

The case is complicated by the fact that upon the mill property in and at the edge of the buildings there was some scrap iron which amounted to about two carloads in quantity, and further, that, at the sale by the sheriff, after the items of property had been specifically offered and sold to Mr. Samuel, the sheriff offered for sale what were called the reversions, or as described by the sheriff, viz : " Q. Did you sell the reversions ? A. We did.   Q. Did you explain at the time of the sale what the reversions included?   A. Yes, sir; we always do, we did then.   That a purchaser buys at his own risk; if there is anything that has been overlooked, he gets it.   That is our idea of it.   The property of the company that had been overlooked the buyer of the reversion got."   As to a particular levy on the two carloads of scrap iron on the Swanger lot the sheriff says : " Q. You said in your examination before that you did not sell that two carloads, and that if they went at all they went in the reversions or remainders, or whatever you call them ?   A. We sold those shells that were near the end.   Q. You sold the ones that were on the Ridley Iron Company near the end up against the mill?   A. We sold them as scrap iron laying outside, but reversions, I do not know what reversions were.   Q. Did you sell two carloads of scrap iron that were over on Mr. Swanger's lot; you did not sell them as such?   A. We did not go near Mr. Swanger's lot, if I recollect.   Q. When you say you did not know what the reversions were, you mean you did not know what they included?   A. No, of course not.   Q. You did sell a lot of scrap iron that was in the mill?   A. Yes. sir. Q. You did not describe it as two carloads?   You just de-

scribed it as that lot and pointed it out? A. That lot; that was all."

The learned trial judge said to the jury: "The question is, in the first place, whether this lot of old iron was levied on and sold. That is the question which was presented to you and argued by counsel. If this old iron was lying there on an adjacent lot, placed there for the convenience of the company, was there at the time when the levy was made, I do not think you would be doing violence to any principle of law or to any fact which appears in the case if you regard the levy as having been made upon that lot of iron. It seems so to me. I should so regard it if I were in your place." Third assignment. "The sheriff says the items were put up and sold, and then there was a sale of what was left. If you believe this property was lying there—old iron—lying across the street, we will say, but still that it belonged to this concern, the Ridley Iron Works, and that it was, as I believe it was, included in the levy, and the different articles of property were sold and then, as the deputy sheriff says, what was left was sold to Mr. Hitner, representing Mr. Samuel, I should say that passed good title to Mr. Samuel." Fourth assignment.

The counsel for plaintiff and defendant each submitted a point requesting the court to say that under the evidence the verdict must be for his respective clients, both of which were refused, but in the charge the jury were instructed, "I confess it seems to me, looking at the case from my standpoint, not intending to take it from you, but intending to leave it to you to decide on what the evidence and law as I have stated to you justify, that the plaintiff has made out a better case here, and that your verdict ought to be for him." Fifth assignment. The jury were practically directed to return a verdict for the plaintiff, as a different verdict would have been in plain disregard of the views of the court as expressed in the charge, and we must so consider the case. The manner of submission was an instruction that the plaintiff had the better case because the levy and sale included the iron on the Swanger lot. The evidence as to these material facts was not so free from doubt as to take their consideration from the jury. The person in best position to know was the deputy sheriff who made the levy and conducted the sale, and his testimony fairly points to the exclusion of the

scrap iron from the levy as a specific item, and that at the sale
the sheriff and purchasers were not on the Swanger lot at all.
Then did the title to the scrap pass under the sale of the item
called reversions? In the case before us the deputy sheriff tes-
tified that in the office of the defendant he made a list of the
property as given to him by the persons in charge, and subse-
quently sold the property so listed from the typewritten state-
ment of his levy, and that he was not on the Swanger lot at any
time.

In Lowry v. Coulter, 9 Pa. 349, under very similar facts, it
was held to be the duty of the judge to charge that if the
sheriff did not see the property at the time of the levy and
after it the execution was fraudulent and void. To be good
the levy must be made in such a way that the officer has the
property within his power and control, or at least within his
view, and after having it so, he makes a levy upon it and fol-
lows it up within a reasonable time by taking possession in
such a manner as to apprise everybody of the fact of its hav-
ing been taken in execution. See also Wood v. Vanarsdale, 3
Rawle, 401; Bennett's Branch Imp. Co.'s Appeal, 65 Pa. 242;
McGinnis v. Prieson, 85 Pa. 111; Sweet v. Williams, 162 Pa.
94. The levy is an assertion of title by the sheriff amounting
to a legal divestiture of the possession of the defendant, and
such as would subject the officer making it to an action of
trespass, but for the protection of the execution. It should
be public, open and unequivocal, not depending for proof of
its having been made upon a mere office entry. This is neces-
sary to prevent fraud and litigation in regard to the title to
property: Duncan's Appeal, 37 Pa. 500, where the Supreme
Court held that property not in the view of the sheriff until
after the return day of the writ was not bound by the levy,
and we see no material difference, if the property is ten miles
distant from the sheriff's view or on property but forty feet
away, separated by a public road and on real estate of strangers
to the writ. The important matter is, did the sheriff actually
levy on it? The writ was a lien in the first instance on all per-
sonal property of the defendants in the county, but this must
be followed up by the levy before the return day and a sale so as
to specifically identify the property sold. On this question
the evidence is not free from doubt. Seizing part of the goods,

in the name of the whole on the premises, is a good seizure of the whole: Trovilli v. Tilford, 6 Watts, 468. But when the property in dispute is not on the premises of the defendant in the execution, and not identified by description, it should be seen by the officer to perfect a levy of it. They need not be removed (Jaffreay's Appeal, 101 Pa. 583), but the disputed fact as to whether they are included in the levy is a question which the superior learning and judgment of a judge cannot be called in aid to solve. And his opinion, however correct it might have been, was improperly before the jury. It was not material as to how the trial judge would regard it if he were on the jury, as he was not so impaneled. Nor was it material whether he believed that it was included in the levy, as the officer was called to testify what he had done in making the levy, and whether it was or was not was a fact for the jury to find from the evidence. It is not only proper but in many cases it is the plain duty of the trial judge to comment upon the testimony (Commonwealth v. Van Horn, 188 Pa. 143), but in a civil case when points requesting binding instructions are refused for both plaintiff and defendant, we think the case should go to the jury to determine which has the better case on the preponderance of evidence freed from the opinion of the court.

The sale in bulk of the items of property under the designation of reversions would not pass title thereto if the property so sold was not levied upon, and whether so levied upon and subsequently sold was for the jury. Trial judges are not compelled to weigh their utterances regarding the evidence in the exquisitely balanced scales sometimes employed by ingenious counsel to discover whether too much or too little has been said (Walton v. Caldwell, 5 Pa. Superior Ct. 143), but when the evidence is conflicting and the inferences to be drawn therefrom are reasonably capable of different constructions, it is error to confine the jury to one view of the case when there is more than one which they should consider: Penna. Canal Co. v. Harris, 101 Pa. 80.

In the case in hand the theory of the plaintiff was specially emphasized, and that of the defendant ignored, by the trial judge, in which there was reversible error: Goerson v. Commonwealth, 99 Pa. 388; Minick v. Gring, 1 Pa. Superior Ct. 484.

The judgment is reversed, and a venire facias de novo awarded.